(No. 21415.—

THE PEOPLE *ex rel.* The County of Cook *et al.* Petitioners, *vs.* OSCAR NELSON, Auditor of Public Accounts, *et al.* Respondents.

*Opinion filed June 24, 1932.*

Urban A. Lavery, for petitioners.

Oscar E. Carlstrom, Attorney General, and Montgomery S. Winning, for respondents.

Mr. Chief Justice Heard delivered the opinion of the court:

A distressing public emergency demanding the aid and relief of the State for its residents who were destitute and in necessitous circumstances arose and was apparent in the fall of 1931, and on November 2 the Governor issued a proclamation calling attention to the necessity of authorizing and providing for furnishing employment during the approaching winter and of obtaining funds to provide emergency relief, and called a special session of the legislature for November 5, 1931, for the purpose, among others, of "supplying funds * * * to provide emergency relief." A call for another special session, issued January 14, 1932, recited that "during the last two years this country has been experiencing an economic change—a process of deflation following a period of inflation." A third call followed on January 28, which recognized the magnitude of the problem of caring for the increasing number of unemployed in the State. In addressing the third special session of the Fifty-seventh General Assembly upon its convening the Governor very forcefully stated: "A civilized people cares for its members in distress. In a few days the resources of voluntary subscription and the ordinary local governmental aid in Cook county and Chicago will fail entirely. * * * The problem must be met. We must care for the many of our citizens who through no fault of their

own need food and shelter and clothing. As Governor of the State of Illinois it is my duty to call to your attention this deplorable situation. The constitution vests in you, the legislative body of the State, the power to enact appropriate legislation to meet this condition." The legislature, fully realizing its responsibility, enacted emergency measures which resulted in the Illinois Emergency Relief Commission, with an appropriation of $20,000,000 for the relief of the unemployed and destitute of the State.

During the pendency of the proposed relief legislation in the legislature and prior to the enactment of the law creating the commission and making the appropriation for moneys to be used by it, the county board of Cook county requested and induced a large number of firms and concerns, including the relator, the Wisconsin Lime and Cement Company, to furnish and provide food, fuel and wearing apparel from December, 1931, to February 6, 1932, for the public relief of residents of Cook county who were in destitute and necessitous circumstances, the claims and liabilities therefor amounting to about $1,500,000. After its organization the Illinois Emergency Relief Commission took over and assumed the burden of giving relief in Cook county, as well as throughout the State, to persons who in its opinion were destitute and in necessitous circumstances and deserving of such relief. The Wisconsin Lime and Cement Company presented to the commission its claim in the sum of $102,452.89 to be approved for payment by the commission for coal delivered by it to persons in necessitous circumstances, as directed by the Cook County Bureau of Public Welfare, from January 4 to January 31, 1932, inclusive. A voucher for this amount was issued by the commission and forwarded to the respondents, Garrett D. Kinney, Director of Finance, and Oscar Nelson, Auditor of Public Accounts of the State of Illinois, with the request that Kinney approve the voucher and Nelson issue a warrant to the Wisconsin Lime and Cement Company for the

amount of the voucher drawn against the Treasurer of the State of Illinois. Kinney refused to approve the voucher and Nelson refused to issue a warrant therefor for the reason that the purchase dates were previous to the organization of the Illinois Emergency Relief Commission and the appropriation therefor. After such refusal the People of the State of Illinois, on the relation of Cook county and the Wisconsin Lime and Cement Company, by leave of this court filed its petition for a writ of *mandamus* against the respondents, Oscar Nelson, as Auditor of Public Accounts, and Garrett D. Kinney, as Director of Finance, respectively, of the State of Illinois, ordering and commanding them forthwith to take such action and steps as are required by law to approve the voucher.

It is contended by the relator that from and after December 1, 1931, it was the intent and purpose of the Governor, and of the General Assembly in passing the act creating the Illinois Emergency Relief Commission and its companion acts, that the burden of the extraordinary and unusual public charitable relief throughout Illinois should be assumed by the State from December 1, 1931, and paid for out of the treasury of the State of Illinois until March 1, 1933, without regard to the time when the legislation providing for the Illinois Emergency Relief Commission might finally be passed and enacted. By the constitution the law-making power of the State is vested in the legislature. Its intent in the exercise of such power by the enactment of statutes is to be determined from the language which the legislature has used in the enactment of such statutes. It is a general rule often announced in this State that a statute will be presumed to operate prospectively, only, and will not be construed to have retroactive operation unless the language employed is so clear that it will admit of no other construction. (*People* v. *Sears,* 344 Ill. 189; *People* v. *Chicago and Eastern Illinois Railway Co.* 343 id. 101; *Jones* v. *Loaleen Mutual Benefit Ass'n,* 337 id. 431; *People* v. *David,*

336 id. 353.) Not only does the language of the act in question fail to clearly show a legislative intent to make its provisions retroactive, but, on the contrary, the language used makes it clear that it was intended to provide for future relief, only. Sections 2 and 5 of the act provide:

"Sec. 2. It shall be the duty of the commission until March 1, 1933, to provide relief to residents of the State of Illinois, who, by reason of unemployment or otherwise, are destitute and in necessitous circumstances. Such relief shall be provided by distributing funds or supplies and by any other means deemed desirable by the commission. For the purpose of carrying out the provisions of this act, the commission may make use of and coöperate with counties, townships, and any other municipal corporations charged by law with the duty of poor relief and with other local relief agencies."

"Sec. 5. Because of the degree of unemployment and the necessity for furnishing assistance to the destitute without delay and particularly during the winter months, an emergency exists, and this act shall take effect upon its passage."

The writ of *mandamus* is a summary writ issued from a court of competent jurisdiction commanding the officer or officers to whom it is addressed to perform some public duty which the relator is entitled of right to have performed and which the party owing the duty has failed to perform. It is an extraordinary remedy, and one petitioning for such writ must show a clear and undoubted right to the relief demanded. (*People* v. *Nelson,* 346 Ill. 247; *Hooper* v. *Snow,* 326 id. 142; *Fergus* v. *Marks,* 321 id. 510.) The relator's petition for the writ of *mandamus* did not upon its face show such clear and undoubted right to the relief demanded, and the demurrer to the petition must therefore be sustained and the writ of *mandamus* denied.

*Writ denied.*