Dorothy Wehrmeister, Plaintiff-Appellee, v. Leonard Carlman, Defendant-Appellant.

Gen. No. 11,100.

Second District, Second Division.
April 14, 1958.
Released for publication May 1, 1958.

171

[REDACTED]

H. Williams Hanmer, of Chicago, for appellant.

Gordon C. Bunge, of Downers Grove, for appellees.

PRESIDING JUSTICE CROW delivered the opinion of the court.

This is an appeal by the defendant from a judgment awarding the plaintiff a writ of mandamus. The writ directed the defendant, as building commissioner of the village of Hinsdale, to issue a permit to build a residence on substantially the east one-half, longitudinally, of four contiguous lots originally platted in a lateral or west-east direction. The original plaintiff died after the entry of the judgment and her executors and trustees have been substituted as appellees.

The material factual matters in evidence are substantially as follows:

On May 8, 1922, the plaintiff acquired title to four contiguous vacant lots in the village of Hinsdale, lots 43, 44, 45, and 46 in a certain platted addition, lying on the east side of Bodin Street, a north-south street, and extending north to Chicago Avenue, a west-east street. They all extended 125 feet west to east, and each was 25 feet wide except lot 46, which was at the

corner or intersection of Bodin Street and Chicago Avenue, and it was 24 feet wide. The village zoning ordinance was adopted February 5, 1923. On April 21, 1924, the plaintiff filed applications for two building permits, to construct one house on lots 43 and 44, the lots farthest to the south, and another house on lots 45 and 46, the lots farthest to the north, the houses to face west on Bodin Street. Plans and specifications for the two houses were submitted with the applications. Permits were issued, as so originally requested, the same day, though they were not available at this trial. A day or two later, the plaintiff owner's son, the contractor, was approached by Mr. Nicholson, the then village building commissioner, who inquired as to what he was going to do, and the contractor said he was going to build a couple of houses. Mr. Nicholson asked that he hold off until Nicholson could give it further consideration with the village authorities. The next day Mr. Nicholson, the building commissioner, or inspector, Mr. Danielson, the then village manager, and Mr. Bruckner, the then village president, came to talk with the plaintiff's son. The three suggested, in substance: "Why don't you change the houses and face them north and have a 35 foot setback . . . ." The contractor asked if that would be permissible, was informed that it was, and that they (the officials) "would fix the permit."

Subsequent to those discussions with the village officers, the plaintiff did build a house on the west 66 feet of the four lots, in accordance with the changed applications for permits, though it was faced west on Bodin Street, instead of north towards Chicago Avenue. Otherwise, this house was built in accordance with the original plans and specifications. The village manager and village president made examinations of that house from day to day as the work progressed. The then contemplated other house for the east 58

feet, approximately, of the lots was never built, but the reason therefor does not appear in the record and is presently immaterial.

The plaintiff later disposed of the west portion of the four lots, that part being described as the west 62½ feet, but has retained ownership of the vacant east portion of the four lots and the present suit is concerned with that east portion. The addition in which these lots lie was originally platted by a plat recorded August 8, 1874.

The permit applications, which have been in the possession of the village since 1924, were produced at the trial and introduced in evidence as defendant's exhibits 3 and 4. Exhibit 3 was the application originally requesting a permit to build on lots 43 and 44. Exhibit 4 was the application originally involving lots 45 and 46. The original description appearing in exhibit 3 was stricken out, and below was written: "The east 58¼ feet of Lots 43, 44, 45 and 46." The original description appearing in exhibit 4 was stricken out and below was written: "The west 66¾ feet of Lots 43, 44, 45 and 46." The changes were not made by the applicant. The then building commissioner caused the applications to be stamped "approved" and affixed his initials, though apparently no actual new permits pursuant to the applications as so amended were issued. The former village president, William T. Bruckner, 86 years old, was called as a defendant's witness. He recalled practically nothing of the transaction, but did identify the initials "F.D.D." appearing on the corner of exhibits 3 and 4, as being those of Mr. Danielson, the then village manager. In Hinsdale, the village manager is or was at that time responsible for the issuance of building permits. There is nothing to indicate the board of trustees of the village disapproved of the changes in the applications or the manner of erection of the house on the westerly portion of the lots.

175

In December, 1945, the plaintiff again made application for a building permit to construct a house on the east 62½ feet of the four lots. The building commissioner refused to issue a permit on the ground that the tract did not have sufficient area. This decision was appealed to the board of appeals, which likewise refused a permit. Other similar requests in certain later years met like refusals. All the administrative rulings were based solely upon the minimum area requirements of the ordinance for a single family dwelling.

On June 11, 1956, the plaintiff filed her present petition for mandamus, to compel the issuance of a building permit for a residence on substantially the east half of the four lots. After trial of the issues, a judgment order, in accordance with the petition, was entered December 28, 1956.

It is the defendant appellant's theory that: (a) the zoning ordinance, as amended in 1944, requires a minimum of one-sixth of an acre, or 7,260 square feet of area for each single family dwelling; (b) since plaintiff's remaining vacant east half of these four lots contains a total of only 6,187.5 square feet, or approximately 15 per cent less than one-sixth of an acre, the zoning ordinance prohibits the erection of a single family dwelling thereon; (c) those remaining portions, the east half, substantially, longitudinally, of the original four lots, originally layed out laterally, cannot be combined and lumped together for this purpose to come within the language and intent of an exception in the ordinance as to minimum area having to do with lots or parcels of land duly recorded prior to the original passage of the ordinance, February 5, 1923.

Section 1369 (3) of the zoning ordinance of the village of Hinsdale, as amended in 1944, provides as follows, so far as material:

176

"INTENSITY OF USE OF LOT: No building with its accessory buildings shall occupy in excess of twenty-five per cent (25%) of the area of an interior lot, nor in excess of thirty-five per cent (35%) of the area of a corner lot. No dwelling or group of dwellings shall hereafter be erected or altered to accommodate or make provision for more than six (6) families on any acre of land, or make provision for more than a proportional number of families on any fractional part of an acre of land, and further that each parcel of land on which a dwelling may be erected or maintained shall have a frontage of not less than fifty (50) feet, except that a single family dwelling may be erected on any lot or parcel of land having an area of less than one-sixth of an acre or having less than fifty (50) feet street frontage, provided that such lot or parcel of land shall have been duly recorded in the office of the Recorder of Deeds of DuPage County or in the office of the Recorder of Deeds or of the Registrar of Titles of Cook County, Illinois, prior to the original passage of this section, February 5, 1923."

Three of the four one-half lots remaining are only 25 ft. x 62½ ft., and one lot is only 24 ft. x 62½ ft., and if the four one-half lots were considered as a single parcel, they are only 62½ ft. x 99 ft., or 6,187.5 sq. ft. in area altogether. The zoning ordinance by its 7,260 sq. ft. minimum area requirement for a single family dwelling, precludes the use of the four one-half lots remaining in their present state for single family dwelling purposes, although the area is in the "A" Residential District and although that is the highest and best use thereof, in fact, the only permissible use therefor except for a library, school, or church, none of which appear practicable under the circumstances, and the nearest commercial use being some three blocks away, unless the situation come within the exception stated in the ordinance, or the village is estopped to raise the question.

There is nothing to indicate that the village or any surrounding nearby property would be injured by the granting of a permit for or the erection of a house on the east 62½ feet of the four lots, as prayed, or that the lapse of time since 1924 has prejudiced the village or surrounding property owners. The closest property owner was the owner of the adjoining westerly portion of these same four lots, and he, in fact, testified as a witness for the defendant here, but he did not voice any objection.

The evidence shows that the changes in the property descriptions on the applications for the two building permits, as of April 21, 1924, were made by officers or agents of the village, so that, as originally intended, after those changes, one house was to be constructed on the westerly portion of the four lots, and the other house was to be constructed on the easterly portion thereof, and such was not only with the approval of the then village officials but actually at their instigation. What the plaintiff has done on the westerly portion, and intends to do on the easterly portion, as we understand it, has been and will be in accordance with that original intention, except that the house built on the westerly portion was faced west on Bodin Street instead of north on Chicago Avenue.

■ We believe, under the circumstances, that the doctrine of estoppel should be applied as against the defendant. The undisputed evidence is that the village officers or agents induced the plaintiff to build her first house on the west portion of the four lots in accordance with their suggestion as to division of the four lots in a longitudinal or north-south manner, instead of in a lateral or west-east manner as originally platted and as she had first intended, and she did as they suggested, with the exception of facing it west on Bodin Street instead of north on Chicago Avenue. They were thoroughly cognizant of what the plaintiff was doing on the westerly portion, and, so far as this

178

record indicates, neither they or the board of trustees ever disapproved thereof, or sought to challenge the plaintiff or subsequent owners thereof in their right to have a single family dwelling thereon. They were also cognizant of the plaintiff's intentions to build another single family dwelling on the easterly portion of the same lots.

In People ex rel. Petty v. Thomas (1935), 361 Ill. 448, though estoppel was held not to apply to the particular situation there, the court, in stating the principles of the doctrine of estoppel as against a municipal corporation said, p. 456:

"Where strictly public rights are involved the courts do not interpose to hold the municipality estopped except under special circumstances which would make it highly inequitable or oppressive to enforce such public rights. . . . The doctrine of estoppel may be invoked against a municipal corporation where there have been positive acts by the municipal officers which may have induced the action of a party and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, but mere nonaction is not sufficient to work an estoppel. . . . In applying this doctrine the courts will not decide the question by the mere lapse of time but by all the circumstances of the case, and hold the public estopped or not, as right and justice may require."

In Melin et al. v. Community Consol. School Dist. No. 76 et al. (1924) 312 Ill. 376, the court said, pp. 383–384:

"A municipal corporation, when acting in its private as contradistinguished from its governmental capacity, may be estopped . . . But before the doctrine of estoppel can be invoked there must have been some positive acts by the municipal officers . . . which may have induced the action of the adverse party and where it would be inequitable to permit the corpora-

179

tion to stultify itself by retracting what its officers had done. . . . The doctrine of estoppel *in pais* applies to the public only to the extent that it leaves the courts to decide the question from all the circumstances of the case, and to hold the public estopped or not, as right and justice may require. The doctrine is applicable only as a means of preventing injustice or fraudulent results. . . . .

"While some of the earlier decisions in applying the principle of estoppel *in pais* have said that the public is estopped or not, 'as right and justice may require,' the very term 'estoppel' is indicative of something preventive and not something creative. It is not a principle by which to promote acts of positive justice by an act of creation, but as the later decisions intimate, is a principle invoked to prevent injustice and fraud, . . . . In all the cases which we have read where the public has been held to be estopped, it has been established by the evidence that by not asserting the doctrine the parties 'would suffer a substantial loss.' . . . Where there has been no 'substantial loss' the doctrine of estoppel has not been held applicable to the municipality . . ."

Something more than strictly public rights are involved in the present case,—the plaintiff's private property rights are also concerned. There have been positive acts by the municipal officers here, years ago, which induced action by the plaintiff and it would be inequitable to permit the corporation to retract what its officers have done. If estoppel be not applied,—disregarding, for the present, the exception in the ordinance,—the plaintiff would suffer a substantial loss. The doctrine is applicable as a means of preventing injustice.

■ We believe also, however, that, under the circumstances, the situation comes within the exception in the ordinance.

180

Under the ordinance as amended in 1944, the 1/6th of an acre area requirement for single family dwellings is retained as it was in the original ordinance, but the exception thereto reads, so far as material, as follows, which is slightly different from the exception as it was in the original ordinance:

"except that a single family dwelling may be erected on any lot or parcel of land having an area of less than one-sixth of an acre . . . provided that such lot or parcel of land shall have been duly recorded in the office of the Recorder of Deeds of DuPage County . . . prior to the original passage of this Section, February 5, 1923."

So far as significant, the words "or parcel of land" were inserted in the exception by the 1944 amendment, following the word "lot" at the two places indicated. If the addition of those words "or parcel of land" has any effect it would seem they somewhat more liberalize and extend the exception than anything else,— the original exception using simply the word "lot" at those places. In any event, as applied to this case, the addition of "or parcel of land" does not, we believe, restrict or limit the exception to something less than it originally covered.

Inasmuch as we have found that the officers or agents of the village by their suggestion induced the original plaintiff to seek, by amendment, a permit for a residence on substantially the west one-half of the four lots, dividing them longitudinally, north-south, instead of laterally, west-east, we cannot say that the remaining area or substantially the east one-half of the same lots should not be considered together for this purpose as a "parcel of land having an area of less than one-sixth of an acre," which was "duly recorded—prior to the original passage of this section, February 5, 1923," within the meaning of the exception in the ordinance, the addition in which this real estate is situated having been, as we have said, orig-

inally platted by a plat recorded August 8, 1874. The defendant refers us to no Illinois cases to the contrary.

■■ The west one-half of these four lots, following that longitudinal division, also contains, as will be seen, less than 7,260 sq. ft. of area, but that apparently was considered by the village officers at the time as coming within the exception in the ordinance, and their subsequent administrative acts generally confirm their interpretation of the ordinance and its exception. We cannot assume the village officers deliberately acted contrary to the ordinance. As public officials, they are presumed to have obeyed and acted in accordance with the law, until and unless something to the contrary is pointed out. Such having been done as to the west part, that would seem to indicate that the east one-half of the same four lots, brought about by that same longitudinal division, containing approximately the same area, and also less than 7,260 sq. ft., should also be considered as coming within the same exception. The defendant suggests no reason why, and cites no Illinois cases as to why, the west one-half of the four lots comes within the exception, as the defendant's predecessor public officials evidently considered it did, but the east one-half thereof does not, or why the village has apparently accepted and acquiesced in the situation as to that west one-half, without challenge, but takes issue now with what appears to be the same situation as to the east one-half. Long continued administrative construction of an ordinance of otherwise possibly doubtful meaning is of some, though, of course, not controlling, weight with a court when the question arises in a judicial proceeding.

Furthermore, the total area in the east one-half of these four lots, 6,187.5 sq. ft., is approximately the same as the total area of the original lots 43 and 44 together, or lots 45 and 46 together (about 6,250 sq. ft., respectively,—also less than 7,260 sq. ft.) and, un-

der the exception in the ordinance, the plaintiff could, we believe, without real question have, in any event, erected single family dwellings on at least lots 43 and 44, together, or on lots 45 and 46, together, in accordance with her original applications for permits. The descriptions in the applications having been amended by the village officers and agents, and the plaintiff having in that manner not proceeded to build on lots 43 and 44, or on lots 45 and 46,—the building sites having been simply changed from two lateral west-east tracts to two longitudinal north-south tracts of substantially the same respective areas,—we cannot . believe the plaintiff by that transformation brought about in that way lost the benefit of the exception in the ordinance which she otherwise rather clearly would have come under had the sites remained as two lateral west-east tracts.

 The writ of mandamus is a summary writ issuing from a court of competent jurisdiction, commanding the officer or body to whom it is addressed to perform some specific duty which the relator is entitled, of right, to have performed and which the party owing the duty has failed to perform: Fergus v. Marks et al. (1926) 321 Ill. 510; Hooper v. Snow et al. (1927) 326 Ill. 142; People ex rel. Jacobi et al. v. Nelson (1931) 346 Ill. 247; People ex rel. County of Cook et al. v. Nelson (1932) 349 Ill. 193. It is an extraordinary remedy and one petitioning therefor must show a clear and undoubted right to the relief; it is a high prerogative writ, and not a writ of right, and is to be granted, or denied, in the exercise of a sound judicial discretion by the Court; the exercise of the jurisdiction to grant, or deny, it rests to a considerable extent in the sound judicial discretion of the Court: Michigan-Grand Building Corp. v. Barrett et al. (1932) 350 Ill. 291.

██ ██ Ordinarily, the proper remedy for a party allegedly aggrieved by the wrongful refusal of a city

official to grant him a permit, where the granting of such permit is made by ordinance a condition precedent to the doing of some act, is by a suit in mandamus to compel the issuance of such permit: Cf. United Artists Corp. v. Thompson et al. (1930) 339 Ill. 595. And mandamus is a proper remedy to require the issuance of a building permit where the only objection thereto is made under the municipal zoning ordinance and where that ordinance is inapplicable to the property in question either because it is void as applied to that property or because the property or situation involved comes within an exception in the ordinance, since under those circumstances the act of issuing the building permit becomes ministerial only and no discretion is involved: People ex rel. Lind v. City of Rockford et al. (1933) 354 Ill. 377; People ex rel. Kirby v. City of Rockford et al. (1936) 363 Ill. 531.

■ Of the Illinois cases referred to by the defendant, Klokke v. Stanley (1884) 109 Ill. 192 and Repp v. Becker et al. (1925) 238 Ill. App. 64 refer, in part, to some of the general principles applicable to mandamus, with which there can be no quarrel, but they do not otherwise involve a case of the present type. Reitman et al. v. Village of River Forest et al. (1956) 9 Ill.2d 448 involved the construction and validity of an ordinance of only some degree of similarity to the ordinance here involved, and the facts and questions concerned and determined were not the same as or similar to those in the present case. Hibbard, Spencer, Bartlett & Co. v. City of Chicago et al. (1898) 173 Ill. 91, Burton Co. v. City of Chicago (1908) 236 Ill. 383, Meltzer et al. v. City of Chicago et al. (1910) 152 Ill. App. 334; Wise v. City of Chicago (1913) 183 Ill. App. 215; and Sinclair Refining Co. v. City of Chicago et al. (1927) 246 Ill. App. 152 say, in somewhat varying forms, that no estoppel can arise from an act of a municipal corporation or officer, such as the issuance of a permit, done in violation of or with-

184

out authority of law, but the defendant does not point out specifically in what particular respect, if any, the actions of the village officials here at the time were in violation of, or prohibited by, the ordinance, or unauthorized, or illegal.

█ We believe the doctrine of estoppel applies, and also that, under the circumstances, the situation comes within the indicated exception in the ordinance. The judgment is not contrary to the manifest weight of the evidence, or to the law, and we perceive no abuse of the sound judicial discretion which the Court had in the issuance of the writ of mandamus. Under the circumstances, it is not our province to disturb the Court's findings of fact: People ex rel. Lind v. City of Rockford, supra.

The judgment will, therefore, be affirmed.

Affirmed.

SOLFISBURG and WRIGHT, JJ., concur.