Walter Rogers, Inc., Appellee, v. William J. Mortimer, Enforcing Officer of the Zoning Ordinance of Cook County, Illinois, and the County of Cook, a Body Politic, and Corporate, Appellants.

Gen. No. 47,337.

First District, Third Division.
November 5, 1958.
Released for publication December 3, 1958.

Benjamin S. Adamowski, State's Attorney of Cook County (Francis X. Riley, Assistant State's Attorney, of counsel) for defendants-appellants.

Paul M. Smith, Jr. and Irving Stillerman, of Chicago (Charles D. Snewind, of counsel) for plaintiff-appellee.

JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from an order entered in the Superior Court of Cook County on September 12, 1957, ordering a writ of mandamus to issue to the defendants William J. Mortimer and the County of Cook commanding them to accept plaintiff's plans and drawings and application for a building permit for a service building and a 478-unit trailer camp dated July 15, 1957, presented on July 29, 1957, and to issue the building permit to the plaintiff in accordance with the plans and application.

Subsequent to the entry of the aforementioned order on September 12, 1957, on or about September 13, 1957, the plaintiff resubmitted its application of July 29, 1957, but requested that the number of trailers be reduced from 478 to 90. This application was refused. Thereupon the plaintiff petitioned for and procured the entry of a rule to show cause for failure to comply with the order of September 12, 1957. The petition and the rule to show cause and the defendant's notice of appeal were all filed on September 27, 1957. After this appeal was perfected and a supersedeas bond was filed in the amount of $20,000, the hearing on the rule was continued generally, pending the disposition of this appeal.

On July 29, 1957, plaintiff presented an application dated July 15, 1957, to the Building and Zoning Bureau of Cook County for a permit to construct a

service or utility building and a 478-unit trailer camp at 123rd Street and Homan Avenue, Worth Township, Cook County, Illinois. The plans and specifications were submitted with the application, which disclosed accommodations for an eventual occupancy of 478 trailers. The proposed service or utility building contained provisions for an office, a laundry room with six to eight washer-dryer units, one men's toilet, one women's toilet, two wash tubs, a boiler room, and a well and pump room. The plaintiff also accompanied the application with a permit from the State of Illinois to construct a park containing 90 trailer spaces.

The application was not accepted on the ground of noncompliance with the existing Illinois statutes and Cook County building ordinances and building regulations for trailer camps, and also because of the variance from the State of Illinois permit. The plaintiff thereupon filed the petition for mandamus.

The immediate question here is whether the Superior Court properly entered the order directing a writ of mandamus to issue in this case.

On the date of the application for the building permit the following ordinances and statutes were in effect:

a. A zoning ordinance of the County of Cook which classified the property upon which it was proposed to erect this trailer camp as I–2, and under that classification a trailer camp was a permitted use. That ordinance was adopted in 1940.

b. Building Regulations for Tourist Camps, adopted by Cook County in December, 1948, which were adopted by reference as a part of the building ordinance of Cook County, Illinois, in 1949. This building ordinance designated the County Superintendent of Highways as a building and zoning officer and vested him with authority to administer and enforce all the provisions of the ordinance. The defendant William

J. Mortimer, County Superintendent of Highways, was so appointed. The building regulations for tourist camps required the construction of service buildings and the provision of facilities in excess of those provided for in the plans accompanying the application for a permit in the instant case.

c. A statute was passed in 1953, by the legislature of the State of Illinois which related to trailer coaches or mobile homes and classified them as "dependent" trailer coach or "independent" trailer coach, the distinction being that the independent trailer coach contained toilet and bath or shower facilities, while the dependent coach did not and had to rely upon service buildings for those facilities. The Act also provided for the issuance by the State of a permit to construct or an original permit. It was under this statute that the State permit to construct a camp for 90 independent trailer units had been issued. That statute also provided that such a permit did not relieve the applicant from securing building permits in municipalities or counties having a building code or from complying with any municipal or county zoning or other ordinance applicable thereto. This is the only one of the pertinent statutes or ordinances which makes the classification of dependent or independent trailer coaches.

It is therefore clear that the issuance by the Department of Public Health of the State of Illinois of the permit to construct a trailer coach park containing 90 independent trailer spaces on the property in question did not automatically require the defendant to issue the building permit. The classification in the State Statute of dependent and independent trailer coaches did not make that classification a part of the ordinances of the County of Cook which had been previously passed. The plans submitted did not provide in the service building for the facilities required by the

384

building ordinance of the County of Cook relating to tourist camps. The application when made was for 478 independent units, and the permit granted by the State was for 90 independent units.

Many collateral issues have been urged in this case. It has been represented that the plaintiff has spent large sums of money relying upon the county zoning ordinance which made it possible for him to use the property for the purposes for which these permits are sought. It has been urged that, although the camp was built for independent units, there was no assurance that it would always be operated in such a manner as to house only independent units, and that, if a large number of dependent units were quartered in the camp, the service building as planned would be entirely inadequate. It appears that the County Board attempted to stop the issuance of this permit by a special resolution directed toward this specific property. The administrative officers sought the advice of the State's Attorney's office, which advised them not to refuse the permit upon the basis of that resolution. All of these collateral matters are entirely unimportant in determining whether or not the writ of mandamus should have been granted.

It has been urged by the appellee that, because the State Statute of 1953 classified trailer coaches or mobile homes as dependent and independent, and that a method of construction of trailers has developed which renders a greater portion of them independent of facilities furnished by the service buildings of tourist camps, the Cook County ordinance, although it is a general one in its terms and applies to all tourist camps, is not now applicable and has been in effect repealed. This rather unusual doctrine of the repeal of an ordinance of a municipality by change in conditions to which it applies from those which existed at the time it was passed is said to be supported by the

385

decision of this court in People ex rel. Brewer v. Kelly, 295 Ill. App. 156. In that case there was a building ordinance of the City of Chicago, and a portion of it related to windows. After providing for distances of walls between windows and the size of windows in relation to the square footage of floor space, it provided, ". . . each such window shall have its top not less than seven feet above the floor and shall be so constructed that at least its upper half may be opened its full width." Subsequent to the passing of that ordinance the use of casement windows developed within Chicago, and the question involved in the case was whether the provision of the ordinance in regard to height applied to casement windows. In that case the lower court found as follows: "The Court Further Finds, that the provisions of section 1241 of the Revised Chicago Code of 1931, with respect to the height of windows, are applicable to double hung sash windows and are not applicable to steel casements of the type shown upon the plans which accompanied petitioner's application for a building permit and identified in these proceedings as Exhibits 'D,' 'D–1' and 'F,' and that under that construction of said section 1241 of the Revised Chicago Code of 1931, the said section of the ordinance is valid." It is perfectly clear that this lack of applicability rested upon the fact that the language of the ordinance did not cover casement type windows but was intended to cover double hung sash windows only, and the ordinance was valid in effect and in no sense abrogated by this ruling. This is clearly distinguishable from the building ordinances of the County of Cook relating to tourist camps, where the ordinance is of such a general nature that it encompasses all house trailers, camp cars, tents, and camp cottages or cabins, and to hold it not applicable would in effect repeal and abrogate the ordinance. Therefore the Brewer case is not controlling.

It is also to be noted that here, the change is not the change in the method of construction of a tourist camp for which the building permit would be issued, but a change in the building of trailers which would use the tourist camp. In the Brewer case there was a permit to build a house which included the window in question, and the change was in the method of construction of a window, which was included in the house. Windows were directly covered by ordinance, whereas trailers are not. Thus the holding of the Brewer case becomes one step further removed from applicability to the instant situation.

■ It is well-established law in Illinois that the writ of mandamus should never be awarded unless the party applying for it shows a clear right to have the thing sought by it done, and by the person or body sought to be coerced, and in doubtful cases it should not be granted. Swift v. Klein, 163 Ill. 269, at 276. The Supreme Court applied that general principle to a situation so similar to our instant one, in the case of People ex rel. Younger v. City of Chicago, 280 Ill. 576, at 580, that it seems to be nearly entirely controlling. The court said: "It was not the duty of the commissioner of buildings to approve plans which were not in compliance with the ordinances of the city, and before applying for the writ of mandamus the relator should have tendered the commissioner of buildings plans which complied with the requirements of the ordinances of the city. The writ of mandamus will be awarded only in cases where the petitioner shows a clear right to the writ and a clear neglect of duty on the part of defendant to perform the act sought to be enforced. In such a case as this, before the writ will issue the petition must show a compliance with all the valid requirements of the ordinances. People v. Busse, 248 Ill. 11." See also People ex rel. Delgago v. Morris, 334 Ill. App. 557, at 563.

■■ It is of course entirely clear that mandamus is not a writ of right but is awarded only in the exercise of sound judicial discretion in accordance with legal principles. People ex rel. Cannella v. City of Chicago, 7 Ill.2d 416, at 418. And, while it is true that the court in the exercise of its sound judicial discretion can refuse the writ although the petitioner has a clear legal right for which mandamus is a proper remedy, People ex rel. Stettauer v. Olsen, 215 Ill. 620, at 622, still there is no authority for granting the writ of mandamus when a legal right does not exist. For it has been held in Kenneally v. City of Chicago, 220 Ill. 485, at 503 that the writ of mandamus, being an extraordinary writ, will issue only in a case where it appears by law that it ought to issue, and the court will not order it in doubtful cases.

The judgment of the Superior Court is reversed. The cause is remanded with directions to enter judgment for defendants, to quash the writ of mandamus and to discharge the rule entered against the defendants.

Judgment reversed and cause remanded with directions.

FRIEND, P. J. and BURKE, J., concur.