William F. Thornton, Appellee, v. George L. Ramsey,
Commissioner of Buildings, Department of Build-
ings of the City of Chicago, Appellant.

### Gen. No. 47,406.

First District, Third Division.
February 11, 1959.
Rehearing denied March 25, 1960.
Released for publication March 25, 1960.

John C. Melaniphy, Corporation Counsel of Chicago (Sydney R. Drebin, Harry H. Pollack and Harry A. Cooper, Assistant Corporation Counsels, of counsel) for defendant-appellant.

Heber T. Dotson, of Chicago for relator-appellee.

JUSTICE BRYANT delivered the opinion of the court.

The order from which this appeal was taken was entered on October 7, 1957, directing that a peremptory writ of mandamus issue forthwith to George L. Ramsey, respondent, Commissioner of Buildings of the City of Chicago, to appoint the relator, William F. Thornton, Assistant Chief of Inspections in the Building Department of the City of Chicago, as of August 9, 1957. The order also sustained plaintiff-relator's motion to strike certain portions of defendant's answer. The complaint for mandamus was filed by the relator on August 13, 1957. The respondent made a motion to strike the complaint, which was denied by the court and respondent directed to answer. Thereafter respondent filed his answer, which was the basis of the motion to strike. The order itself does not specify that portion of the answer which was stricken. The notice of motion to strike referred to Paragraph 3 of the answer. The motion itself spoke only of "particularly those portions which seek to plead another cause of action pending before the Civil Service Commission of the City of Chicago." It appears that within this double reference of the notice of the motion and the motion is contained all of the allegations of fact which were stricken by the order of the court. The order, which merely stated "that the plaintiff's motion to

453

strike would be sustained," was necessarily predicated upon the allegations of fact in the pleadings and the motions. There was no evidence taken before the court below.

We therefore consider the facts set forth in those pleadings.

From on or about August 16, 1954, the relator, hereinafter referred to as Thornton, had been employed as a Building Inspector by the Department of Buildings of the City of Chicago, working under the jurisdiction of the respondent, hereinafter referred to as Ramsey.

On July 9, 1957, Ramsey as Commissioner of Buildings of the City of Chicago filed charges against Thornton as a Building Inspector before the Civil Service Commission, in which he charged that Thornton "was guilty of conduct unbecoming an employee of the City of Chicago," in that, while he was an employee as Building Inspector, he had been engaged in another business or vocation in violation of a certain section of the Municipal Code of Chicago, which required "every employee in the Department of Buildings shall devote all of his efforts to such employment and shall not be engaged in other business or vocation."

On July 9, 1957, Thornton was notified that charges had been filed against him before the Civil Service Commission for his removal as Building Inspector, and that the Commission had ordered a trial date.

On the trial date, July 17, 1957, Thornton appeared before the Civil Service Commission by counsel, and his case was continued again until September 18, 1957.

Previous to August 2, 1957, Ramsey requested a certification from the Civil Service Commission of the City of Chicago of a person qualified to fill a vacancy in the Building Department of the City of Chicago as Assistant Chief of Inspections. Ramsey was Commissioner of Buildings and as such was the executive head of that Department.

454

On August 2, 1957, the Civil Service Commission addressed a notice to Thornton, stating that his name had been reached for certification and appointment to the position of Assistant Chief of Inspections in the Building Department and directed him to report to the medical examiner.

On August 9, 1957, the medical examining physician of the Civil Service Commission and the Secretary made a report that William F. Thornton had been medically and physically examined and found fit for certification to the position of Assistant Chief of Inspections in the Building Department of the City of Chicago.

On that same day Ramsey refused to appoint Thornton to that position.

On August 12, 1957, Thornton served a written demand on Ramsey, demanding his appointment as Assistant Chief of Inspections in the Building Department of the City of Chicago.

On that same day Ramsey again refused to appoint Thornton to that position.

On August 13, 1957, Thornton filed his petition for writ of mandamus directed toward Ramsey.

On September 3, 1957, Ramsey, by his counsel, the Corporation Counsel of the City of Chicago, filed a motion to strike the complaint of Thornton.

On September 6, 1957, motion to strike the complaint was denied, and Ramsey was given twenty days to file his answer.

On September 26, 1957, Ramsey filed his answer, setting forth, inter alia, the facts relating to the filing of charges against Thornton on July 9, 1957, as hereinbefore set forth, which was apparently the portion of the complaint stricken by the order of October 7, 1957. That order also directed the issuance of the writ of mandamus. This appeal is taken from that order.

Subsequent proceedings relating to the enforcement of that order were had, but they are not pertinent to this appeal.

■ In order for mandamus to lie the petitioner must show a clear legal right to the writ, and there must be a clear neglect or refusal on the part of defendant to perform the act sought to be enforced. People ex rel. Younger v. City of Chicago, 280 Ill. 576, at 580; L. E. Myers Co. v. Sanitary District of Chicago, 386 Ill. 542, at 547; Hooper v. Snow, 326 Ill. 142 at 144; People v. Nelson, 346 Ill. 247, at 251.

Did such a clear legal right exist in Thornton to be appointed to the office of Assistant Chief of Inspections in the Department of Buildings of the City of Chicago? The complaint does not set forth whether the appointment was a promotional or an original appointment. It was urged by Ramsey in his motion to strike the complaint that the complaint was thus fatally defective. The court refused to strike the complaint. Smith-Hurd Ill. Ann. St. Ch. 24½, Sections 47 and 48, provide that for an original appointment the Civil Service Commission shall submit the name of the person standing highest on its register, but for a promotional appointment the names of not more than three persons having the highest rating shall be submitted. The statute also provides that the appointing officer shall appoint the person whose name is submitted for the original appointment and shall appoint one of the three submitted for promotional appointment.

Thornton's name was the only name submitted to the appointing officer, Ramsey. The position of Building Inspector, which Thornton previously had held, is a lesser position in the Building Department than Assistant Chief of Inspections, to which latter position Thornton demanded that Ramsey appoint him. It is therefore not entirely clear as to whether the appointment was an original or promotional appointment, and

456

whether the submission of one name only to the appointing officer Ramsey complied with the provisions of the statute, and Ramsey was thereby deprived of his discretion. The language requiring certification by the Civil Service Commission and the language requiring appointment by the appointing officer is mandatory, and the appointment is a probationary one. The statute also provides the methods by which the appointing officer may remove an employee during the probationary period and when the employee has attained full Civil Service status.

Under these circumstances, was there any discretion vested in the appointing officer in regard to making this appointment? Such discretion would have to be inherent in the appointing officer where charges were, pending or decided, that the applicant was a violator of the law, or had disqualified himself otherwise, or implied from the appointing officer's right of removal. Apparently this question has never been directly decided in Illinois.

If the Civil Service Commission is obliged to certify the person at the top of the list, and the appointing officer is obliged to appoint him, then a person at the top of the list in the Civil Service Commission would be absolutely entitled to the appointment of an office, and there would be no discretion of any sort remaining in either the Civil Service Commission or the appointing officer. This complete lack of discretion seems to be negated in the case of People ex rel. Laist v. Lower, 251 Ill. 527. There it was contended by an applicant that once the Civil Service Commission had certified the eligibility of the applicant, the appointing officer had no power to do anything except complete the appointment, even though the Civil Service Commission had subsequently revoked the certificate. The court said: "The commission has no power to appoint to any office or position, but the power to appoint is in the

head of the department or office in which a position classified under the Civil Service act is to be filled."

In view of the non-discretionary obligation of the Civil Service Commission to certify a name, that case would seem to indicate that there was at least some discretion inherent in the appointing officer.

In a recent case, People ex rel. Ballinger v. O'Connor, 13 Ill.App.2d 317, which involved the question of whether the Police Commissioner could have a police applicant examined and discharge him during the probationary period because of a lack of physical capacity for the police job, it was urged that the Police Commissioner was bound by the physical examination given by the Civil Service Commission throughout the probationary period. It was held that, since, after the policeman had become a full-fledged Civil Service employee, the power was in the Police Commissioner to have him discharged for want of physical capacity, the Police Commissioner's hands woud not be tied during the probationary period, and he could order the probationary policeman examined and discharge him. While not controlling, that decision lends credence to the idea that it would be foolish to require the appointing officer in this case to appoint Thornton and then immediately remove him by filing charges against him and therefore leaves some inherent discretion in him under circumstances similar to our case.

■ But whether there was such inherent discretion in the appointing officer there was certainly a judicial discretion vesting in the court. While it is true that the right to a writ of mandamus never exists unless there is a clear legal right to the action commanded, the converse does not follow. Such right rests always in the sound judicial discretion of the court. The principles involving that discretion were discussed in People v. Olsen, 215 Ill. 620, at 622, as follows:

"The writ of *mandamus* is not a writ of right, and it was largely within the sound judicial discretion of the trial court to refuse to issue it. When a writ of *mandamus* is asked the court may inquire whether it will operate impartially, create confusion and disorder, and whether it will or will not promote substantial justice. Courts, in the exercise of the discretion with which they are vested, may, in view of the consequences attendant on the issuing of a writ of *mandamus*, refuse the writ, though the petitioner has a clear legal right for which *mandamus* is a proper remedy. (People v. Board of Supervisors, 185 Ill. 288.) The court may act on existing facts and view the case with reference to the consequences of its action, (People v. Ketchum, 72 Ill. 212,) and may consider whether the petition has been presented to settle mere abstract rights, unaccompanied by practical or substantial benefits, North v. Trustees of University of Illinois, 137 Ill. 296; People v. Masonic Benevolent Ass'n, 98 id. 635."

██ ██ The principles underlying this judicial discretion often have been considered and applied. The court has often denied the writ of mandamus where the relator does not come in with clean hands (36 A. L. R. 508; 18 R. C. L., Mandamus, Section 53, p. 138; 35 Am. Jur., Mandamus, Section 240, p. 16; People ex rel. Aeberly v. Chicago, 240 Ill. App. 208, at 215), or where the act to restore the relator would be a fruitless act (36 A. L. R. 508; 26 I. L. P. Mandamus, Section 5), or where the applicant has been rightly dismissed for malfeasance in office (35 Am. Jur., Mandamus, Section 240, pp. 16, 17.) It has also been held that the writ will never issue for an act which has become unlawful, nor where the respondent no longer has the power to perform the act. People ex rel. Cannella v. Chicago, 7 Ill.2d 416, at 418. In the case of People v. Kelly, 391 Ill. 136, the court refused to grant the mandamus be-

cause there was a proceeding pending in another court which would be affected. Here, there is pending a proceeding started in the Civil Service Commission to remove Thornton from office. Also, the writ will not be granted when to do so would cause confusion or disorder in the public service. 35 Am. Jur., Mandamus, Section 240, p. 16; People ex rel. Cannella v. Chicago, 7 Ill.2d 416, at 420; People v. Dunne, 258 Ill. 441, at 456; Kenneally v. Chicago, 220 Ill. 485; Carson v. Chicago, 189 Ill. App. 247.

█ In view of the questions as to whether the position to be filled was an original or promotional appointment, and as to whether there is an inherent right to refuse to appoint an applicant who is charged or convicted of a violation of the law which would affect his ability to perform the duties of his position, and most of all as to the facts upon which the court must exercise its judicial discretion, the court was clearly in error in entering the order striking the answer of respondent. The answer alleged questions of fact which, if true, would affect the exercise of proper judicial discretion and should not have been stricken, but a reply should have been required and the facts determined.

A survey of the facts and the principles of law which we have set forth above leads to the inescapable conclusion that the court in arbitrarily issuing the writ was guilty of an abuse of discretion. There is doubt as to whether Thornton's "hands are clean." Would not Thornton's appointment, followed by his instant discharge and filing of charges covering the same acts now before the Civil Service Commission be fruitless? Do not the charges pending indicate that Thornton may be found to be guilty of malfeasance in office? Is there not now a proceeding pending which would dispose of the question of Thornton's right to this office? Who can doubt that Thornton's discharge with proceedings pending and then appointment to a superior

460

position would cause confusion and disorder in the Department of Buildings? Under all the circumstances the directing that mandamus should issue was a clear abuse of judicial discretion by the court.

The order striking the answer of respondent and granting the writ of mandamus is reversed. The cause is remanded. The court is directed to defer further action until the charges made before the Civil Service Commission in regard to Thornton's violation of the municipal ordinance of the City of Chicago are ultimately determined. In view of our direction, the motion to amend here the answer of respondent filed in the lower court will be denied without prejudice to present such a motion to the lower court.

Judgment reversed and cause remanded with directions.

FRIEND, P. J. and BURKE, J., concur.