People of the State of Illinois, ex rel. American National Bank and Trust Company of Chicago, as Trustee under Trust No. 23679, Plaintiff-Appellant, v. Sidney D. Smith, Commissioner of Buildings of the City of Chicago, a Municipal Corporation, Defendant-Appellee.

Gen. No. 53,129.

First District, Fourth Division.

May 21, 1969.

L. Louis Karton, of Chicago, for appellant.

Raymond F. Simon, Corporation Counsel of the City of Chicago (Marvin E. Aspen and Stuart Sikevitz, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

In July, 1966, defendant issued to La Salle National Bank, as Trustee, a building permit (No. B 377334) for the construction of a three-story, twenty-four-unit apartment building pursuant to plans submitted as described later in this opinion. Thereafter, relator (hereafter referred to as plaintiff) purchased the land in question from La Salle and proceeded with some excavation work. In September, 1966, defendant halted the work by issuing a stop order. Plaintiff then brought this action for a writ of mandamus to compel defendant to rescind the stop order. After hearing, the court entered judgment in favor of defendant. Plaintiff appeals, claiming that defendant is estopped from preventing plaintiff from proceeding with construction pursuant to the building permit. The pertinent facts are not in dispute.

The subject property is located at 2619–27 West Agatite Avenue, Chicago. It is trapezoidal in shape, bounded on the north by 99 feet of frontage on Agatite Avenue,

356

on the south by 44½ feet of frontage on Montrose Avenue, on the west by 290 feet of the North Shore Channel, and on the east by 290 feet abutting the property of J. D. Brown. Agatite Avenue does not bridge the channel but comes to a dead end in front of the property in question. This property was purchased in 1956 by La Salle as trustee. At that time it was zoned for apartment use under the 1942 Comprehensive Amendment to the Chicago Zoning Ordinance. The 1957 Comprehensive Amendment to the Chicago Zoning Ordinance reclassified this property in its north half as an R3 general residence district, and in its south half as a restricted service district. This reclassification, though permitting limited apartment construction, did not permit the type of building anticipated by La Salle when the land was purchased; so, in May, 1963, it brought an action (Cause No. 63 S 12330) to invalidate the zoning ordinance as it applied to the subject property. La Salle proposed to build a twenty-four-unit apartment building consisting of three stories to a height of 30 feet. Eighteen off-street parking spaces were to be provided on the Montrose Avenue portion of the property, with a ten-foot wide driveway on the eastern boundary connecting it to Agatite Avenue. This driveway would connect to an east-west alley bisecting the block between Agatite and Montrose Avenues. The proposed building would have met the requirements of the R4 general residence district classification.

On January 3, 1964, after hearings and considering all relevant evidence, the Master concluded that La Salle's claim was meritorious, and recommended that the property be rezoned to permit the proposed construction. Among the conclusions of the Master's Report, it was stated:

10. The present R3 General residence district classification applying to the northern half of the Subject Property would permit the construction of a

3-story apartment building 30 feet high on the site, which could be placed within 6 feet of the lot directly east of the Subject Property. Plaintiff's proposed use is intended to be 30 feet high and 10 feet of its westerly line or *4 feet* further from the lot line than is presently required, thereby *providing more space between the proposed use and the building next east than now required.* . . . (Master's emphasis.)

It was also concluded that the 18 off-street parking spaces would prevent an increase in the traffic and parking problems in the neighborhood. The connecting driveway along the east side of the property would also alleviate the effect of the present dead end, as defendant had previously suggested be done with a public alley. On April 6, 1964, the Final Judgment Order was entered in the Circuit Court adopting the Master's Report in all respects. It was ordered that La Salle, and all persons claiming through it, had a legal right to construct a 24-unit apartment building on the property, in compliance with all applicable construction provisions of the Chicago Building Code. It further ordered that if La Salle, or any person claiming through it, should apply for a building permit, it should be issued, if such application covered erection of a building which "would contain twenty-four units and would substantially conform to the plans submitted by the plaintiff in this cause, and would provide 18 off-street parking spaces," and if the application met the construction requirements of the Chicago Building Code. On October 26, 1964, a building permit was issued to La Salle, and was renewed on April 23, 1965, and again extended on October 18, 1965. All of these permits indicate that they were issued on plans submitted by Architect B. Krauss, 300 W. Washington Street, the two later ones also indicating on their face that they were extensions of the first one.

On July 25, 1966, defendant issued Permit No. B 377334 for the construction of a three-story, 24-unit apartment

358

building, made no reference to the earlier permits, and indicated that it was issued on the basis of plans dated July 12, 1966, and submitted by Architects Shayman and Salk, 5844 N. Lincoln Avenue. These plans, which were prepared not for La Salle but for plaintiff in this case, contained a notation on their first page which read, "Twenty-four apts. Circuit Court Order No. 63 S 12330." Plaintiff alleges that it was in reliance on this permit that it purchased the property from La Salle and incurred $50,000 of expenses in excavation work for the building. On September 23, 1966, defendant issued a stop order against construction under Permit No. B 377334 on the ground that the new plans of July 12, 1966, did not provide for a 10-foot side lot building line on the east, and therefore were not in substantial compliance with the plans which had been submitted to the Circuit Court and had been required by its order. Plaintiff made a demand on defendant to rescind the stop order but to no avail; so, plaintiff brought the action, now before us on appeal, for a Writ of Mandamus to issue against defendant commanding him to rescind his stop order.

At the trial, George L. Shapiro, a lawyer and 50% beneficial owner of the subject property under plaintiff's trust, testified on behalf of plaintiff that the property had been purchased on July 12, 1966, and a trust agreement entered into on the same date. He had previously had his architects (Shayman and Salk) prepare new plans which were turned over to the seller who had then obtained the permit. A purchase price was paid and 24 caissons were put in. Arrangements were also made for a mortgage. (The court did not deem it relevant for the witness to show further commitments, obligations incurred, or expenditures.)

Defendant was called by plaintiff under section 60 of the Civil Practice Act (Ill Rev Stats 1965, c 110, § 60), and testified that his duties, as Commissioner of Buildings for the City of Chicago, are to enforce the provisions

of the Municipal Code pertaining to buildings. He must examine plans submitted to the Building Department and see that building permits are issued by the department if the plans meet the requirements of the Code. Permit No. B 377334 was issued to La Salle on July 25, 1966, and it permits the erection of a 3-story, twenty-four-unit apartment building at 2619–27 W. Agatite. This document is issued when a person submits a proper application, and after the plans have been reviewed by the various sections of the department. He stopped the work on the construction in question, but does not know if the permit has been revoked. Work was stopped because the court order indicated that the building would have to be in substantial compliance with the plans that had been submitted to the Master and the Court. The new plans did not show the 10-foot side lot building line which had been indicated on the original plans reviewed by the Master and the Court, and, in his opinion, were therefore not in substantial compliance.

Raymond M. Hayes testified on behalf of defendant as an appraiser. He described the subject excavation as coming to the lot line of the neighboring property on the east, and said that in his opinion plaintiff's building would have a detrimental effect on the value of the neighborhood of 10 to 15% because of the increased parking problem and the inability of fire trucks or ambulances to drive in to the dead end and turn around.

The trial court decided that plaintiff was not entitled to a Writ of Mandamus, and entered judgment in favor of defendant. Plaintiff now appeals, claiming that it had relied upon the issuance of Permit No. B 377334 to assume financial obligations and expenses and to commence the construction of the building, and, therefore, defendant was estopped from preventing the completion of the building.

 We find that there was no error in the trial court's decision. A Writ of Mandamus is a summary

writ, commanding the officer or body to whom it is addressed to perform some specific duty which claimant is entitled, of right, to have performed and which the party owing the duty has failed to perform. Wehrmeister v. Carlman, 17 Ill App2d 171, 183, 149 NE2d 453. It is not a writ of right but is awarded only in the exercise of sound judicial discretion in accord with legal principles. People ex rel. Cannella v. City of Chicago, 7 Ill2d 416, 131 NE2d 98; Thornton v. Ramsey, 24 Ill App2d 452, 165 NE2d 65; Walter Rogers, Inc. v. Mortimer, 19 Ill App 2d 381, 153 NE2d 855. A claimant, therefore, must show a clear legal right to the writ, and there must be a clear neglect or refusal on the part of the defendant to perform the act sought to be enforced. Thornton v. Ramsey, supra; Walter Rogers, Inc. v. Mortimer, supra; Wehrmeister v. Carlman, supra. Mandamus to compel the rescinding of the stop order was an appropriate remedy for plaintiff to seek on the facts of the case now before us (Wehrmeister v. Carlman, supra; People ex rel. Deddo v. Thompson, 209 Ill App 570; Thornton v. Ramsey, supra; Walter Rogers, Inc. v. Mortimer, supra), but plaintiff did not establish its right to the relief sought.

The estoppel claim of plaintiff must find its base in the final judgment order entered by the Circuit Court upon the Master's Report in the zoning hearing. That decree, however, was expressly limited to plans in substantial conformity with the plans which had been submitted for court review in that action. Those very plans were submitted in the first three permit applications. Plaintiff then revised the plans to eliminate the side driveway space—one of the salient features which had been found to be important in the zoning case—and obtained Permit No. B 337334 for the construction of the apartment building. Now, on the authority of this permit, plaintiff claims that it had incurred certain expenses and obligations amounting to a substantial change of position,

and defendant is therefore estopped from interfering with the construction of plaintiff's apartment building.

▮ Estoppel depends on the facts and circumstances as justice may require. Where a party, acting in good faith under affirmative acts of the city, has made such expensive and permanent improvements that it would be highly inequitable and unjust to destroy the rights acquired, the doctrine of equitable estoppel has been applied, and plaintiff relies on these cases. People ex rel. Deddo v. Thompson, 209 Ill App 570; Cities Service Oil Co. v. City of Des Plaines, 21 Ill2d 157, 171 NE2d 605; Wehrmeister v. Carlman, 17 Ill App2d 171, 149 NE2d 453; Sinclair Refining Co. v. City of Chicago, 246 Ill App 152. Plaintiff here, however, has not established the reliance in good faith which is necessary to vest it with a right to mandamus. It is obvious to us that the suit by La Salle to invalidate the R3 general residence and B4–2 restricted service zoning was successful, in major part, because both the Master and the Chancellor were strongly influenced by the proposal to provide a driveway on the east side of the lot from Agatite Street to the off-street parking space, and the decree so provided, in effect.

▮ ▮ Plaintiff subsequently purchased the subject property and assumed with it the right to build a twenty-four-unit apartment only in compliance with the Circuit Court's final judgment order. This order entered with respect to real property is binding and enforceable upon plaintiff-purchaser since its property rights arose by succession after the institution of the particular suit and were acquired through a party to it. Smith v. Estate of Womack, 17 Ill App2d 264, 149 NE2d 778; Sweeting v. Campbell, 2 Ill2d 491, 119 NE2d 237. Plaintiff could enforce the adjudged right to obtain a permit for the construction of a building which "would substantially conform to the plans submitted by the plaintiff" in the zoning action. Contrariwise, if there were not substantial con-

formity to those plans, the city would have the duty to deny such a permit. It is conceded that if the Commissioner of Buildings issues a permit based upon submitted plans, and he subsequently discovers a deviation from the plans, he has the power to stop work on the building. Municipal Code of Chicago, Ill (1967), § 43–10. As a parallel, we believe that the subsequent discovery of noncompliance with a judicial order specifying certain prerequisites raises a similar valid right in the Commissioner to reexamine the legality of the permit's issuance and to stop the work if indicated.

The testimony of the principal beneficial owner of the subject property reveals that he has been an attorney for 33 years and an investor and builder for 10 years, having built approximately a million dollars worth of buildings. We must conclude that he was aware of the Circuit Court decree permitting the change in the zoning for the construction of a building incorporating only the essential features of the plans considered by the court. In fact, the plans eventually submitted by plaintiff were so inscribed on their face when the permit was issued. While it is true, as argued by plaintiff, that the Circuit Court decree makes specific reference only to a twenty-four-unit apartment building and the 18-space off-street parking; it is also true that the decree adopted the Master's Report "in all respects." More importantly, it specifically limits the authorized building to one which "would substantially conform to the plans submitted by the plaintiff in this cause." Plaintiff had actual knowledge of the plans which had been submitted to the court, as Shapiro testified that the former owner (from whom he purchased the property) turned them over to him in connection with the purchase negotiations. Shapiro, in turn, gave them to his own architects and directed the preparation of new plans, which, so far as the record shows, were substantially the same as the old ones except that the size of the building was increased, thereby adding to its rent poten-

tial, and eliminating the open side yard space in the process. This could not have been an inadvertent alteration of the plans, and it is significant that plaintiff does not contend that the new plans "substantially conform" to the original plans which the court had approved. Plaintiff relies exclusively on the estoppel point, arguing that the City should be estopped by the approval of the plans, in effect, through issuance of the permit, regardless of how mistaken the City's subordinate employees may have been in so doing. This argument translates itself into the proposition that if the requirements of the court's decree are violated through inadvertence, or otherwise, the City is helpless to correct its error and must forever remain in violation, if not in contempt, of the court's command.

It also appears that defendant acted by issuing the stop order as soon as he discovered the deviation from the Circuit Court's order. The permit was issued on July 25, 1966, and the stop order was issued on September 23, 1966. Under the circumstances, defendant's actions were justified. Wise v. City of Chicago, 183 Ill App 215; Sinclair Refining Co. v. City of Chicago, 246 Ill App 152; Paulus v. Smith, 70 Ill App2d 97, 217 NE2d 527. In the Sinclair case, a building permit for a gas station was revoked six weeks after it was issued because the plaintiff had failed to obtain an exception to a zoning ordinance from the city council. The court explained that the plaintiff knew both the law and the facts, yet it proceeded to build with an illegal permit. The court eschewed the estoppel plea because there was no indication that the city, by any positive acts, had led the plaintiff to act to its detriment. In the Wise case, a building permit was revoked after construction of a garage had commenced, because the plaintiff had received the approval of only some, but not all, of the neighbors in the block. The city had no authority to issue a permit in that circumstance,

and the plaintiff, by his conduct, appeared to know it. In Paulus, the plaintiff had received a permit to erect a billboard which, by both the plaintiff's and the defendant's measurements, was less than 400 feet from an expressway and thus in violation of a city ordinance. The permit was revoked in spite of the estoppel claim, since the plaintiff had known of the ordinance.

Plaintiff here relies on Cities Service Oil Co. v. City of Des Plaines, 21 Ill2d 157, 171 NE2d 605. In that case, the plaintiff brought suit to enjoin the enforcement of an ordinance prohibiting the location of a gas station within 300 feet of a church. There, the plaintiff's building was under construction with a permit when the work was stopped and the permit revoked for violation of the ordinance. The court found that the city was estopped from interfering with the completion of the structure because the plaintiff had absolutely no knowledge of the violation. The opinion recognized that "if one is aware of the applicable ordinance, or makes no attempt to know of it, the issuance of a permit contrary thereto does not create an estoppel against the city." The court found, however, that the city had denied the plaintiff access to copies of the ordinance while actively inducing it to commence construction. These propositions do not apply here.

██ ██ The general rule is that a city cannot be estopped by an act of its agent beyond the authority conferred upon him. Anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority. Cities Service Oil Co. v. City of Des Plaines, supra; Sinclair Refining Co. v. City of Chicago, 246 Ill App 152; Wise v. City of Chicago, 183 Ill App 215; Paulus v. Smith, 70 Ill App2d 97, 217 NE2d 527. We are aware that this rule is qualified, however, to enable a party to invoke the doctrine of estoppel where action was induced by the conduct of municipal officials, and where, in the

absence of such relief, a substantial loss would be suffered and the municipality would be permitted to stultify itself by retracting what its agents had done. Cities Service Oil Co. v. City of Des Plaines, supra; People ex rel. Deddo v. Thompson, 209 Ill App 570; Wehrmeister v. Carlman, 17 Ill App2d 171, 149 NE2d 453.

Plaintiff here submitted his plans and received his permit through the regular administrative procedure. There were no policy decisions to be made or approved in securing plaintiff's permit. Nor was there any actual inducement by any governmental official. The permit was issued merely through an administrative mistake by a member of defendant's staff. As stated in Sinclair Refining Co. v. City of Chicago, 246 Ill App 152, the basis for estoppel must be an act of "the city itself," such as legislation by the city council, and not just an unauthorized act of a ministerial officer or a ministerial misinterpretation. On this ground we distinguish People ex rel. Deddo v. Thompson, 209 Ill App 570, and Wehrmeister v. Carlman, 17 Ill App2d 171, 149 NE2d 453. In the Thompson case, the city council itself had directed the issuance of a permit to the plaintiff to construct a garage, although it was known by all concerned that such construction was in violation of an ordinance prohibiting it within 200 feet of a hospital or a school. After completion of the building, an operating license was denied to the plaintiff because of the ordinance violation. The court held that, under this circumstance, the city was estopped to deny the plaintiff the license, since the city had made a special exception for the plaintiff, not unlike a zoning change, and had induced plaintiff to proceed in good faith. In the Wehrmeister case, the building commissioner suggested and permitted a deviation from the current zoning ordinance in 1924 on condition that the plaintiff develop her land under his strict supervision. Half of the land was so developed by the plaintiff, with

many suggestions and inspections being made by the commissioner. From 1945 to 1956, the plaintiff tried to obtain a permit to develop the remainder of the land. The applications were denied, so a mandamus writ was issued against the village because of the prior active inducement to plaintiff to build her house in accordance with the suggestion of the village officers. The court said, "There have been *positive acts* by the municipal officers here, years ago, *which induced action by the plaintiff, . . . .*" (Emphasis supplied.)

Similarly, plaintiff cites Deer Park Civic Ass'n v. City of Chicago, 347 Ill App 346, 106 NE2d 823, Fifteen Fifty North State Bldg. Corp. v. City of Chicago, 15 Ill2d 408, 155 NE2d 97, and Renieris v. Village of Skokie, 85 Ill App2d 418, 229 NE2d 345, for the proposition that any substantial change of position through expenditures, or incurrence of obligations under a building permit, entitles the permittee to complete the construction and use the premises for the purpose authorized, irrespective of subsequent zoning or changes in zoning. Post-permit zoning changes are irrelevant in the case now before us. In each of those three cases, the plaintiff obtained a valid building permit or was in a position probably to obtain a valid permit under existing zoning ordinances. Relying on this authority, the plaintiffs incurred substantial expenses by commencing the construction of their buildings. Subsequently, the zoning ordinances were amended in such a way as to render the building permits inconsistent with the zoning of the subject property. The courts held that the cities in question were estopped from revoking the once valid building permits solely on the basis of the subsequently amended zoning. These three cases are therefore distinguishable from the case before us.

A final argument of plaintiff is that it was denied the opportunity at trial of showing the full extent of its expenses and commitments incurred under the building per-

367

mit. We find that the evidence was adequate for the presentation of plaintiff's theory of the case, but we don't agree with the theory, so we find no merit in this contention.

The decision of the Circuit Court is affirmed.

Affirmed.

DRUCKER, P. J. and STAMOS, J., concur.