THE PEOPLE *ex rel.* WILLIAM A. RECKTENWALD, Plaintiff-Appellant, *v.* ARTHUR L. JANURA, General Superintendent of the Forest Preserve District of Cook County, Defendant-Appellee.

First District (4th Division) No. 76-989

Opinion filed April 6, 1978.

Robert C. Howard, Bertrand A. Rice, Ludwig Kolman, and Joan E. Steinman, all of Chicago, for appellant.

J. Stirling Mortimer, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The relator, William Recktenwald, is a resident and taxpayer of Cook County, Illinois, and is employed as chief investigator for the Better Government Association. In his petition he sought a writ of mandamus to compel Arthur Janura, general superintendent of the Forest Preserve District of Cook County, to grant him access to records showing the names and total compensation paid to all persons employed by the District in 1974. Following a hearing the trial court entered an order denying the petition on the grounds that it was too broad and that granting it would cause great disorder and confusion and financially wreck the District. Relator then brought this appeal in which the following issues are raised: (1) is the petition so broad in the information sought that it would invade the privacy of District employees; (2) would granting the petition cause great disorder and confusion in the District; (3) did the trial court abuse its discretion by not granting the petition.

We reverse and remand with instructions that the petition be granted.

The facts are relatively simple and are not in dispute. On May 22, 1975, relator wrote to the defendant requesting access to the following records:

"(1) Records showing the names of all persons employed by the Forest Preserve District of Cook County for all or any part of the year 1974.

(2) Records showing the total compensation, including

reimbursements for expenses, received by each person employed as set forth in (1) above for services rendered to the Forest Preserve District of Cook County in the year 1974."

This request was refused, although the District did offer to disclose this information with respect to any specific employee named by relator. Relator then filed his petition seeking access to the records described in his May 22 letter. That letter was incorporated by reference in the petition and was further set out as Exhibit "A" to the petition.

The only witness at the hearing on the petition was the defendant, Superintendent Janura. He testified that in 1974 the District had 1,072 employees. The District's payroll records consisted of an authorization sheet and a payroll sheet. Those sheets contained the names of the employees, their salaries and allowances. The District also kept petty cash records which contained the records of expense reimbursements paid to employees. The payroll and authorization sheets also included the following information concerning employees: address, birthdate, social security number, employee number, title, number of dependents, charitable contributions, wage garnishments, whether the individual was suspended, any loss of pay for suspension.

With the aid of his comptroller and personnel officer, the Superintendent had estimated the cost to the District of complying with relator's request would be $2,000. The work involved would be a review by a personnel department employee and a comptroller's office employee of the records of their respective departments, blacking out information which the District did not wish to disclose and attendance of an employee while the records produced were inspected by relator. The Superintendent acknowledged that an alternate source available for employee names and salaries, though not for expense reimbursements, was the District's copies of the wage and tax statement for each employee. (Internal Revenue Form W-2.) He agreed that all other data on the forms could be blacked out, although no estimate had been made on the cost of providing the information in this manner. No testimony was presented concerning how long it would take to make available the requested information to relator assuming the mandamus were issued.

At the close of the hearing the trial judge denied the petition, finding that the relief sought would "cause great disorder and confusion and financially wreck [the District]" and also finding that the relief sought was too broad.

## I.

Article VIII, section 1 of the 1970 Illinois Constitution provides:
 "(a) Public funds, property or credit shall be used only for public purposes.

(b) The State, units of local government and school districts shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance.

(c) Reports and records of the obligation, receipt and use of public funds of the State, units of local government and school districts are public records available for inspection by the public according to law." (Ill. Const. 1970, art. VIII, §1.)

Pursuant to that constitutional imperative, section 3a of the Local Records Act (Ill. Rev. Stat. 1975, ch. 116, par. 43.103a), states:

"Reports and records of the obligation, receipt and use of public funds of the units of local government and school districts are public records available for inspection by the public. These records shall be kept at the official place of business of each unit of local government and school district or at a designated place of business of the unit or district. These records shall be available for public inspection during regular office hours except when in immediate use by persons exercising official duties which require the use of those records. The person in charge of such records may require a notice in writing to be submitted 24 hours prior to inspection and may require that such notice specify which records are to be inspected. Nothing in this section shall require units of local government and school districts to invade or assist in the invasion of any person's right to privacy."

Relator asserts that his right to compel disclosure of the records at issue here by the extraordinary writ of mandamus arises out of those provisions. Defendant does not assert that the form of action is improper, but rather contends that the records sought are not subject to disclosure because such disclosure would violate the privacy of the District's employees.

We first note that defendant's recital in his brief of the numerous items of personal information contained in the records as presently maintained by the District is irrelevant. Relator's petition and the testimony at trial establish that the only information sought was the names and total compensation of the District's employees for 1974. It is apparent from defendant's testimony that the parties contemplated that all other information present in the records would in some manner be excluded from inspection. Indeed, defendant testified under questioning by his attorney that his computation of cost included the cost of deleting some of the information in the records. Such selective disclosure of records is not uncommon. (See, *e.g., Department of the Air Force v. Rose* (1976), 425 U.S. 352, 48 L. Ed. 2d 11, 96 S. Ct. 1592; *Industrial Foundation v. Texas Industrial Accident Board* (Tex. 1976), 540 S.W. 2d 668, *cert. denied* (1977), 430 U.S. 931, 51 L. Ed. 2d 774, 97 S. Ct. 1550.) Therefore, it

is clear that only this limited information must be evaluated in determining whether it was properly subject to disclosure.

The constitutional and the statutory provisions both apply specifically to "records of the * * * use of public funds." Defendant would construe this language to refer only to "financial" records, and further would distinguish payroll records from financial ones. We find no basis for this limitation in these provisions. To the contrary, the legislative history of the constitutional provision contradicts this construction. The original proposal submitted to the Sixth Illinois Constitutional Convention by its Committee on Revenue and Finance would have specified that "salaries and other compensation paid from public funds" were included in the public funds covered. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1999, 2003 (1970).) This specification was eliminated with the explanation that "[t]his clause is unnecessary since 'salaries and other compensation' is a 'use' of public funds. 'Use' is used in other sections of the Article when the intention is to include salaries and other compensation but the 'including' clause is not used. Deletion of that clause here makes the Article consistent in this respect." (7 Proceedings 2223-2224.) Thus, the legislative history of the provision establishes that its drafters intended it to apply to records of salary expenditures. This construction is in harmony with the established common law right to inspect public records. *People ex rel. Gibson v. Peller* (1962), 34 Ill. App. 2d 372, 181 N.E.2d 376.

■■■ Since we conclude that the statutory language includes records of. salary expenditures within its coverage, the only remaining obstacle to establishment of the right to these records is the proviso that the act does not require invasion of any person's right to privacy. Our research has not uncovered a prior Illinois case on this precise point. However, our Supreme Court has ruled that requiring disclosure by public employees of extensive personal financial information does not violate those employees' right to privacy. (*Stein v. Howlett* (1972), 52 Ill. 2d 570, 289 N.E.2d 409, *appeal dismissed* (1973), 412 U.S. 925, 37 L. Ed. 2d 152, 93 S. Ct. 2750; *Illinois State Employees Association v. Walker* (1974), 57 Ill. 2d 512, 315 N.E.2d 9, *cert. denied* (1974), 419 U.S. 1058, 42 L. Ed. 2d 656, 95 S. Ct. 642.) In *Stein* the challenged statute provided that State public officials must disclose certain economic interests when income from those interests exceeded specified minimum amounts; local public officials were required to disclose their interests in companies which did business with those officials' respective local governmental units. In *Walker* the challenged provision was an executive order by the Governor requiring certain State officials to file portions of their tax returns with a Board of Ethics along with a statement of economic interests. This information was available for reasonable public inspection. In both of these cases the court

weighed the State's interest in such disclosure against the individuals' right to privacy and concluded that the requirements did not unconstitutionally infringe on that right. The disclosures sought by this mandamus action are much more limited in content than those upheld in *Stein* and *Walker*. Yet the interests of the State and the public in such disclosure are just as strong, supported as they are by constitutional and statutory provisions concerning public access to such records. The Supreme Court of New Hampshire has upheld, under authority of a statute similar to ours, the right of a resident taxpayer of a local school district to access to the name and salary of each schoolteacher in the district. (*Mans v. Lebanon School Board* (1972), 112 N.H. 160, 290 A.2d 866.) The statute in *Mans* gave every citizen the right to inspect all public records with a number of exceptions, the pertinent one being records pertaining to financial information and other files whose disclosure would constitute invasion of privacy. The court held that disclosure of the names and salaries of the teachers would not violate their right to privacy. While one factor in that case differing from the one before us was that Maine had a history of disclosure of teachers' names and salaries, we still find the case to be persuasive authority for our determination that public disclosure of the names and salaries of all the District employees for 1974 does not constitute an invasion of the privacy of those employees.

■■ Defendant also contends, and the trial court specifically found, that granting the petition would cause great disorder and confusion with the District and would financially wreck it. We are cognizant that the judgment of the trial court refusing to grant the writ should not be reversed unless that court's findings were contrary to the manifest weight of the evidence. (*People ex rel. Siegal v. Griffin* (1956), 9 Ill. App. 2d 541, 133 N.E.2d 536.) Using that standard here we cannot agree with the ruling of the trial court. Initially, as to the finding of financial ruin to the District flowing from the granting of the writ, it should be noted that the Superintendent of the District had computed the total cost of compliance to be $2,000, an expense which poses no threat to the financial security of the District. Nor do we find applicable the defense that the writ would cause great disorder and confusion in the public service. Case law establishes that this defense applies to disruptions of a great magnitude. Thus, it has been successfully invoked to deny writs requiring reassessment of property taxes where the original assessment had already been computed and taxes were already being collected based on that assessment (*People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 235 N.E.2d 589); or to compel an action which would prejudice ongoing executive disciplinary proceedings (*Thornton v. Ramsey* (1959), 24 Ill. App. 2d 452, 165 N.E.2d 65); or acts which would require displacement of a number of employees already promoted to new ranks. (*People ex rel.*

*Erickson v. Sheehan* (1959), 24 Ill. App. 2d 43, 163 N.E.2d 834.) Defendant has cited no cases, nor has our research uncovered any, in which an Illinois court denied mandamus because of mere administrative inconvenience. Yet that is all that the evidence in this record establishes: utilization of several employees and expenditure of $2,000. By the public policy of this State, and by express statutory provision, it was and is the duty of this District, along with other local governmental units, to provide access to such records. The language of the statute suggests that certain adjustments in procedures might be required for compliance: it delineates where records should be kept, hours during which they should be available to the public, and procedures for notice of desire to inspect them. Thus, it can be seen that defendant cannot avail himself of the defense that such compliance with the law would cause great disorder and confusion to the District.

It is true, as defendant has pointed out, that granting of a writ of mandamus does not arise as of right, but is within the sound discretion of the court. (*People ex rel. Maro v. Board of Auditors* (1971), 48 Ill. 2d 202, 268 N.E.2d 424.) But such discretion may not be exercised arbitrarily to deny such relief. (*People ex rel. Bradford National Bank v. School Directors* (1941), 309 Ill. App. 242, 32 N.E.2d 1008.) Where the order of the trial court is based on findings for which we cannot find support in the record, it must be concluded that the denial of a writ of mandamus to compel disclosure required by law and supported by constitutionally invoked public policy on public access to public records was not based on a sound exercise of judicial discretion.

Accordingly, the judgment of the trial court is reversed and the cause remanded for entry of an order issuing a writ of mandamus to compel defendant and the District to grant the relator access to the records specified in his petition. We have noted that at trial it was not established how long it would take the District to comply with such a writ. The statute establishes a 24-hour time period. However, inasmuch as the records being sought have not heretofore been requested from the District under this statute, the trial court should conduct a hearing solely to determine the reasonable amount of time in which compliance may be obtained.

Reversed and remanded.

JOHNSON, P. J., and LINN, J., concur.