MID-AMERICA TELEVISION COMPANY, Plaintiff-Appellant, *v.* PEORIA HOUSING AUTHORITY *et al.*, Defendants-Appellees.

Third District   No. 80-222

Opinion filed February 11, 1981.

Thomas M. Atherton, of Frings, Bagley, Atherton & Clark, and Fred A. Bernardi, of Bernardi, Ault & Bode, both of Pekin, for appellant.

Ross E. Canterbury and David R. Aplington, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Peoria County in favor of the defendant, Peoria Housing Authority (PHA), and against the plaintiff, Mid-America Television Company (Mid-America). The PHA is a municipal corporation. As a part of its function as a public housing authority, it receives title 8 Federal rent subsidy funds and disburses the funds to various landlords within the territorial confines of

its authority. These funds are for the benefit of poverty-level-income-group tenants. Under this program, the tenants are required to pay up to 25 percent of their incomes for rent, with the balance of the rent paid directly to the landlords through the PHA. Landlords are given the choice of participating or not participating in the subsidy program. If they choose to participate, they are then guaranteed reasonable compensation.

Sometime prior to March 4, 1980, Mid-America, owner of a local television station, WEEK-TV, obtained information that a certain landlord was receiving rent subsidy payments for a dwelling that had not been approved by inspectors of the PHA. These subsidy payments were purportedly being made by the PHA with knowledge that the property had failed to pass scrutiny by its inspectors. This story was broadcast over WEEK-TV on March 4, 1980.

On March 5, 1980, the news director of WEEK-TV sent a letter to the executive director of the PHA requesting access to certain information pursuant to the Illinois Local Records Act. Specifically, the station requested a list of landlords receiving title 8 Federal funds for housing through the PHA, the amount of monthly payments received, and a list of the addresses of those properties subsidized under the title 8 program and offered to pay any costs incurred in searching for and copying the requested records. The PHA refused the request and refused all subsequent written and verbal requests for access.

In response to the PHA's refusal to provide the information, Mid-America brought an action for a writ of *mandamus* praying that the trial court require the PHA to produce the requested information for the immediately preceding 12-month period. The defendants admitted all the facts averred in the complaint, but asserted two affirmative defenses. The first related to an alleged right of privacy of the tenants living on the subsidized properties and the second raised a similar right in favor of the landlords. Mid-America moved for summary judgment, and the trial court found in favor of the PHA, ruling that they had prevailed on their affirmative defenses.

There is only one issue raised on appeal by Mid-America—whether the trial court abused its discretion and ruled contrary to the manifest weight of the evidence when it denied Mid-America's complaint for a writ of *mandamus*. We reverse.

In its complaint for issuance of a writ of *mandamus*, Mid-America based its request for access to the PHA's records on two separate legal grounds, one constitutional and one statutory.

The constitutional provision relied upon in making the request is article VIII, section 1 of the 1970 Illinois Constitution, which provides:

"(a) Public funds, property or credit shall be used only for public purposes.

(b) The State, units of local government and school districts shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance.

(c) Reports and records of the obligation, receipt and use of public funds of the State, units of local government and school districts are public records available for inspection by the public according to law."

The statute on which Mid-America relied in making its request is section 3a of the Local Records Act (Ill. Rev. Stat. 1979, ch. 116, par. 43.103a). Pursuant to the abovementioned constitutional imperative, it provides:

"Reports and records of the obligation, receipt and use of public funds of the units of local government and school districts are public records available for inspection by the public. * * * These records shall be available for public inspection during regular office hours * * *. The person in charge of such records may require a notice in writing to be submitted 24 hours prior to inspection and may require that such notice specify which records are to be inspected. Nothing in this section shall require units of local government and school districts to invade or assist in the invasion of any person's right to privacy."

The PHA contends that the information requested by Mid-America does not constitute "reports and records" as meant by the statute or the constitutional provision. Alternatively, the PHA argues that even if the information does constitute a report or record, the PHA may not disclose the information because to do so would invade the privacy of the landlords involved in the program and the tenants residing in the apartments.

■■ We initially deal with the PHA's contention that the information requested is not "reports and records" within the meaning of the statute or the constitutional provision. The PHA argues that the Local Records Act and the Constitution require that only the total expenditures of the agency need be disclosed and that the act does not require the disclosure of more detailed information. We disagree.

The report of the Committee on Revenue and Finance to the Constitutional Convention states that one of the objectives of the Finance Article is "to assure that the Illinois citizen has the broadest possible access to information on the fiscal conditions and operations of state and local government, so that he may hold the elected officials accountable for their performance in office." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2007 (hereinafter cited as Proceedings).) To ensure officials' accountability the Committee stated, "What is critical is

that the public have access to those papers which are necessary to determine where revenue originates, where it is spent and how it is employed while in the custody of the government or its fiscal agents." (7 Proceedings 2012.) A simple summary of the total amount spent by an agency without any further clarification as to where and how the money was spent is virtually useless in determining whether the agency acted properly. To ensure accountability of public officials, it is necessary that "reports and records" refer to more specific transactions than a mere summary of the total amount. Therefore, we believe that the information requested by Mid-America is a report or record within the meaning of the Constitution and statute.

The PHA's second argument is that it cannot release the information because to do so would violate the right of privacy of the landlords and tenants involved in the program. The PHA relies on *Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107, 390 N.E.2d 835, as authority for its contention that the landlords' right of privacy would be violated. We find *Lopez* to be inapplicable to the case at bar. In *Lopez*, the plaintiffs filed a complaint seeking access to building inspection reports made by the Department of Buildings of the city of Chicago under section 13 of the Local Records Act (Ill. Rev. Stat. 1979, ch. 116, par. 403.113). The circuit court of Cook County allowed plaintiffs' motion for summary judgment, declaring that reports of building inspections are public records under the Local Records Act and section 41—7 of the Municipal Code of Chicago. The appellate court reversed on the grounds that initial investigation reports are not public records under the statute or at common law, and the case was appealed to the supreme court.

The supreme court held that section 13 is not a general disclosure-authorization provision. Since section 13 is not a general disclosure provision, the court decided that if a basis for disclosure existed, it must be found outside the Local Records Act. The issue thus became whether inspection reports are public records available at common law. In determining whether there was access to the records under the common law, the court used a balancing test which weighed the general public policy favoring open government against the interest of the public in having the business of government carried on efficiently and without undue interference. The court placed heavy emphasis on the fact that these were preliminary reports which were only the first stage in the process of finding building violations. Several other steps had to be taken before the owners could be prosecuted for building violations. Therefore, the court held that considerations of privacy and due process militated against public access to initial investigation reports without notice to the building owner and without an opportunity to respond. Granting access would interfere with the government's efficiency in bringing about

corrections of building violations. For this reason, the court denied the plaintiffs access to the investigatory records.

In contrast to *Lopez*, the complaint in the instant case was brought under section 3a of the Local Records Act (Ill. Rev. Stat. 1979, ch. 116, par. 43.103a), which is specifically an access statute. Therefore, we do not need to resort to the balancing test enunciated in *Lopez*. The only bar to disclosure listed in section 3a is invasion of privacy. We find no protectable right of privacy for the landlords which prevents disclosure. In *People ex rel. Recktenwald v. Janura* (1978), 59 Ill. App. 3d 143, 376 N.E.2d 22, the court held that the Forest Preserve District of Cook County had to grant the plaintiff access to records showing the names and total compensations paid to all persons employed by the district in 1974. The court rejected defendant's argument that such data would invade the privacy of the employees, holding that the State's interest in disclosures by public employees did not unconstitutionally infringe on that right. In other words, people receiving money from the State for services rendered forfeit some privacy interests. In the instant case, the landlords receive remuneration from the State for renting their buildings to poverty-level tenants. We see no reason why people benefitting from public funds will have their right of privacy invaded simply by disclosing records showing they receive public funds. There was no invasion of privacy of the employees in *Janura*, and we find no such invasion of the landlords' privacy here.

Neither do we find any invasion of the tenants' privacy. The PHA contends that disclosing the requested information would be an unreasonable intrusion upon the seclusion of the tenants, unreasonably place them in a false light, and give unreasonable publicity to their private life. We disagree.

The PHA has alleged no facts which would support its claim that the seclusion of the tenants would be intruded upon. Mid-America did not request the names of the tenants living in the apartments. The record is devoid of any fact which would support the PHA's claim that the tenants' seclusion would be intruded upon. Neither is there any support in the record for the PHA's claim that disclosure of the requested information would unreasonably place the tenants in a false light before the public.

Finally, the PHA claims that if WEEK-TV broadcasts a story about the PHA and shows locations of the buildings involved in the subsidy program, people who know the tenants could deduce they are participating in this program. The PHA contends that this is an invasion of the tenants' privacy in that it gives unreasonable publicity to their private life. The crux of this argument is that the tenants' receipt of public aid is a private fact, and if the PHA released the requested information to Mid-America and WEEK-TV broadcast it, people who know the tenants of

these buildings would know they are receiving public aid. The flaw in this argument is that it assumes that the receipt of public aid is a private fact, the publication of which would be an invasion of privacy. We do not believe it is such a fact. For example, the Public Aid Code of Illinois provides that the names and addresses of recipients of public aid, along with the amounts received, be kept in a record book open to public inspection. (Ill. Rev. Stat. 1979, ch. 23, par. 11—11.) Thus, it is clearly seen that the State does not consider the receipt of public aid to be a private fact. Indeed, the identities of the recipients must be made available for public inspection. Therefore, we find that the possibility that some tenants may be recognized as receiving public aid does not constitute an invasion of privacy. For the abovementioned reasons we find the trial court was in error in determining that the information requested by Mid-America should not have been disclosed because it would violate the landlords' and tenants' privacy.

■■■ The granting of a writ of *mandamus* does not arise as of right, but is within the sound discretion of the court. But such discretion may not be exercised arbitrarily to deny such relief. Where the order of the trial court is based on a misinterpretation of the applicable law, it must be concluded that the denial of a writ of *mandamus* to compel disclosure required by law and supported by constitutionally invoked public policy on public access to public records was not based on a sound exercise of judicial discretion. See *People ex rel. Recktenwald v. Janura* (1978), 59 Ill. App. 3d 143, 376 N.E.2d 22.

Accordingly, the judgment of the circuit court of Peoria County is reversed and the cause remanded for entry of an order issuing a writ of *mandamus* granting Mid-America access to the records requested.

Reversed and remanded.

SCOTT and BARRY, JJ., concur.