MARTIN J. OBERMAN, Indiv. and as Alderman of the 43d Ward of Chicago, Plaintiff-Appellee, *v.* JANE M. BYRNE, Indiv. and as Mayor of the City of Chicago, *et al.*, Defendants-Appellants.

First District (5th Division)   No. 82—962

Opinion filed January 13, 1983.

Stanley Garber, Corporation Counsel, of Chicago (Jerome A. Siegan, Assistant Corporation Counsel, of counsel), for appellants.

Donald L. Metzger, of Chicago (Metzger & Associates, Ltd., of counsel), for appellee.

JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Martin J. Oberman, alderman and taxpayer of the city of Chicago, brought an action seeking writ of *mandamus* and other relief, compelling defendants, including Jane M. Byrne, mayor of the city of Chicago, and other city officers, to permit inspection and copying of certain public records in their custody. Judgment was entered in favor of plaintiff, and a peremptory writ of *mandamus* issued commanding defendant, Mayor Jane M. Byrne, to provide plaintiff with copies of records of expenditures from the Chicago appropriation ordinance line item 100—9112.710 for the years 1979, 1980 and 1981, used for the mayor's contingency fund, and from line item 100—9112.801 for the years 1980 and 1981 used for a report by the Hay Associates (hereinafter Hay Reports). Defendants appeal the judgment essentially on grounds that the mayor's contingency fund and the Hay Reports are not subject to public disclosure pursuant to the Illinois Constitution, the Local Records Act, the Municipal Code of Chicago or under Illinois common law.

The pertinent facts are as follows. On October 26, 1981, plaintiff

filed a complaint for writ of *mandamus* and for injunctive relief. According to the complaint, in December 1980, the City Council of Chicago adopted an appropriation ordinance which included the amount of $65,000 for budget line item and account No. 100—9112.710 for "contingent and other expense for corporate purposes not otherwise provided for: to be expended under direction of the Mayor." The complaint stated that in 1979 and 1980, defendant and her predecessor in office had spent amounts of $63,344 and $115,000, respectively, from this, the mayor's contingency fund account. The complaint also stated that the December 1980 appropriation ordinance included an appropriation for 1981 in the amount of $400,000 for budget line item and account No. 100—9112.801 "for the analysis and implementation of improvements in departmental operations and management and personnel practices and controls: to be expended under the direction of the Mayor." A similar appropriation was made for the year 1980 in the amount of $1,400,000. Pursuant to this appropriation, Hay and Associates, an independent consulting firm, was contracted by the mayor to conduct a study and analysis of Chicago personnel practices and thereafter compiled its reports and recommendations. These reports and recommendations are referred to as the "Hay Reports." The complaint further alleged that plaintiff wrote to defendants requesting access to the above records and that his requests were refused. Plaintiff accordingly filed this action seeking access to the requested records.

On November 30, 1981, defendants filed a motion to dismiss the complaint, and on December 11, 1981, plaintiff filed a motion for summary judgment. On March 26, 1982, the motion to dismiss was denied, and summary judgment granted, the trial court entering two orders for *mandamus* commanding the mayor to provide plaintiff with all records sought in the complaint. Defendants have appealed that portion of the writ of *mandamus* compelling disclosure of the mayor's contingency fund and the Hay Reports.

OPINION

### The Mayor's Contingency Fund

■ Defendants initially argue for the first time on appeal that the plaintiff's complaint is insufficient to support the issuance of the writ because it fails to allege that the particular records sought are either in existence or in the possession of the mayor, and therefore it fails to demonstrate a clear legal duty to disclose such records. Although in an action for a writ of *mandamus* it is necessary for the

plaintiff to demonstrate a clear right to this extraordinary relief (*Walter v. Board of Education* (1982), 93 Ill. 2d 101), an objection which is not preserved in the trial court cannot be raised for the first time on appeal. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *Pathman Construction Co. v. Hi-Way Electric Co.* (1978), 65 Ill. App. 3d 480, 382 N.E.2d 453.) Under the Illinois Civil Practice Law, "[a]ll defects in pleadings, either in form or substance, not objected to in the trial court are waived." (Ill. Rev. Stat. 1981, ch. 110, par. 2—612(c).) Only where a complaint, with all the intendments in its favor, wholly and absolutely fails to state a cause of action at all, can an objection be made to it for the first time on appeal. (*Pathman Construction Co.; Village of Hillside v. Chicago, Aurora & Elgin R.R. Corp.* (1976), 40 Ill. App. 3d 861, 353 N.E.2d 227.) Defendants have not argued here that the complaint competently fails to state a cause of action, nor does their motion to dismiss raise an objection to the sufficiency of the cause of action on the grounds raised here. Accordingly, the issue of the sufficiency of the complaint is not properly before this court for review. We note, however, that with respect to the alleged defect, defendants have not denied the existence of the particular records sought by plaintiff's complaint. In rendering its decision the trial court addressed the issue raised by defendants' brief, stating, "I want to make it clear that I am not requiring the City to create any records or summaries, but only to disclose those documents that do *in fact* exist." (Emphasis added.) Thus, we find no merit to defendants' contentions premised on the notion that the writ at bar requires the creation of any records, summaries or the like that were not in existence at the time of the instant litigation.

The defendants next argue that the instant action is barred by the doctrine of collateral estoppel. In support of this position defendants refer to the memorandum presented in support of their motion to dismiss. There, defendants informed the trial court that, "In *Martin J. Oberman v. Michael Bilandic* [circuit court of Cook County] #78 L 3345, the instant plaintiff sought to have a breakdown and itemization from the Mayor's Contingency Fund for two years. The Plaintiff in *Oberman v. Bilandic* relied on the same authority alleged in the instant case, namely, the Illinois Constitution, the Local Records Act and Section 25—29 of the Municipal Code of the City of Chicago. In *Oberman v. Bilandic* [the trial judge] granted defendant's Motion to Dismiss and, in effect, held that Plaintiff was not entitled to documentation or a breakdown and itemization from the Mayor's Contingency Fund." In ruling on this point, the trial court in the instant case noted that defendants had failed to furnish sufficient information to

provide a basis for ruling on the issue of collateral estoppel. The court stated, "I cannot note from the record in this case—what facts were litigated, how they were litigated, what the actual judgment was, and I don't think it's the court's duty to search out facts not presented to us."

■ We have thoroughly examined the record presented on the motion, along with the supporting memorandum and we find that the trial court properly rejected defendants' claim of collateral estoppel. The doctrine generally precludes parties and their privies from relitigating facts in a subsequent action which were specifically litigated and determined in a prior action. (*Lange v. Coca-Cola Bottling Co. of Chicago, Inc.* (1969), 44 Ill. 2d 73, 254 N.E.2d 467; *Village of Northbrook v. Cannon* (1978), 61 Ill. App. 3d 315, 377 N.E.2d 1208.) Here, defendants have failed to support their claim of collateral estoppel in the trial court with a record sufficient to indicate the specific issues of fact determined in the previous litigation. Indeed, from the state of the record, it appears that defendants have not asked the trial court to apply this doctrine to specific facts litigated in the previous litigation at all, but rather have attempted to urge it to follow another court's previous construction of the constitution, a statute, and city ordinances. The construction of a statute, ordinance or constitutional provision is a question of law. (See generally *Coalition For Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 359 N.E.2d 138; *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450; *Village of Northbrook; Johnson v. Town of the City of Evanston* (1976), 39 Ill. App. 3d 419, 350 N.E.2d 70.) Collateral estoppel, however, pertains to the relitigation of facts, not to questions of law. (*Village of Northbrook.*) Under the circumstances presented here, we believe that the defendants have not only failed to adequately support their claim of collateral estoppel on the record, but have generally misapprehended the applicability of this doctrine to the issues presented in the instant litigation. (See generally *Village of Northbrook.*) Thus, we turn to the merits of defendants' appeal.

The first issue before us is whether the mayor's contingency fund account for the years in question is subject to disclosure under provisions of the Illinois Constitution, the Local Records Act (Ill. Rev. Stat. 1981, ch. 16, par. 43.101 *et seq.*), chapter 23, section 7 of the Municipal Code of Chicago, or under Illinois common law.

Article VIII, section 1 of the 1970 Illinois Constitution, provides:

"(a) Public funds, property or credit shall be used only for public purposes.

(b) The State, units of local government and school districts

shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance.

(c) Reports and records of the obligation, receipt and use of public funds of the State, units of local government and school districts are public records available for inspection by the public according to law."

Our supreme court has recognized that this provision of the Illinois Constitution mandates public access to the financial records of units of local governments. (*Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107, 390 N.E.2d 835.) This constitutional mandate was implemented by the General Assembly by an amendment to the Local Records Act (Ill. Rev. Stat. 1981, ch. 116, par. 43.103a.) Section 3a of the Act provides:

"Reports and records of the obligation, receipt and use of public funds of the units of local government and school districts *** are public records available for inspection by the public. *** These records shall be available for public inspection during regular office hours ***. The person in charge of such records may require a notice in writing to be submitted 24 hours prior to inspection and may require that such notice specify which records are to be inspected. Nothing in this section shall require units of local government and school districts to invade or assist in the invasion of any person's right to privacy."

Thus, section 3a of the Local Records Act provides expressly for public access to local financial records subject to specified limitations as to time, place and circumstances. Ill. Rev. Stat. 1981, ch. 116, par. 43.103a; *Lopez.*

It is evident that the records of expenditures from the contingency fund account before us plainly concern the obligation, receipt, and use of public funds, and therefore constitute local financial records under the Illinois Constitution and the Local Records Act. Defendants, however, insist that an "itemized list of specific expenditures" is not mandated by the constitutional and statutory scheme, and that the comptroller's vouchers, indicating only that monies were in fact issued for the contingency fund account, are the only records on this subject which the lawmakers intended to be disclosed. Defendants support this assertion with quotations from the debates of the Illinois Constitutional Convention of 1970 which purportedly show that (1) the legislative intent was to disclose only records which show the broad and general direction to which expenditures went, and (2) it was the legislative intent to exclude generally records of expenditures from contingency funds. These arguments are without merit.

■ With respect to defendants' contention that the Local Records Act and Constitution require only that comptroller's vouchers showing only the total amounts issued to the contingency fund need be disclosed, and that the Act does not require the disclosure of more detailed information, we refer to the recent opinion in *Mid-America Television Co. v. Peoria Housing Authority* (1981), 93 Ill. App. 3d 314, 417 N.E.2d 210. In that case the reviewing court rejected similar arguments by a defendant that only the total expenditures of an agency need be disclosed as opposed to the more detailed information sought by the plaintiff. There, the court noted that the report of the Committee on Revenue and Finance to the Constitutional Convention expressly states that one of the objectives of the Finance Article is " 'to assure that the Illinois citizen has the broadest possible access to information on the fiscal conditions and operations of state and local government, so that he may hold the elected officials accountable for their performance in office.' (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2007 ***.)" (93 Ill. App. 3d 314, 316, 417 N.E.2d 210, 212.) The court also pointed out that to insure officials' accountability, the Committee stated that it is critical " 'that the public have access to those papers which are necessary to determine where revenue originates, *where it is spent and how it is employed while in the custody of the government ***.*' (7 Proceedings 2012.)" (Emphasis added.) (93 Ill. App. 3d 314, 317, 417 N.E.2d 210, 212.) From reviewing the above committee records, the court concluded that a simple summary of total amounts spent without any further clarification as to where and how the money was spent would be virtually useless in determining accountability of local officials. We agree. In construing a statute, courts should examine the statutory language and its context as well as its statutory purpose. (*Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107, 390 N.E.2d 835; *Warden v. Byrne* (1981), 102 Ill. App. 3d 501, 430 N.E.2d 126.) From the foregoing, we are convinced the objective of the constitutional provision is to insure accountability of public officials for public funds in their custody. To effect this purpose, it is necessary that public disclosure be made of specific transactions and not mere disclosure of the source of the revenue and "broad direction" to which expenditures went. Therefore, we believe that any attempt here to limit public disclosure to only the city comptroller's vouchers would clearly frustrate the constitutional and statutory purpose.

■ Defendants argue that the appellate court opinion in *Pope v. Parkinson* (1977), 48 Ill. App. 3d 797, 363 N.E.2d 438, correctly evidences the intent of the Constitutional Convention to limit disclosure

to those reports and records bearing upon the broad and general direction to which public expenditures go. We are not persuaded by that decision, as we find its holding inapposite to the situation at bar. In that case the defendant, an official of the University of Illinois, had publicly released information concerning the contracts and profits and losses relating to performances at the University's "Assembly Hall." The plaintiff sought a writ of *mandamus* compelling disclosure of additional records giving a breakdown reflecting the financial data for each individual performance. The court held that the "University is not a unit of local government or a school district to which section 3a of the Local Records Act [citation] might apply." (48 Ill. App. 3d 797, 802, 363 N.E.2d 438, 442.) The court also found that the University had complied with the constitutional requirements by publicly disclosing a summary of Assembly Hall revenue and expenditures. It is obvious that the *Pope* decision cannot be read to limit disclosure under the Local Records Act since the Act itself was deemed inapplicable in that action. Moreover, in our view, that opinion fails to fully consider the stated objectives of the constitutional provision as evidenced in the report of the Committee on Revenue and Finance to the Constitutional Convention, and as set forth in the *Mid-America Television Co.* decision noted above. In *Warden v. Byrne* (1981), 102 Ill. App. 3d 501, 430 N.E.2d 126, this court adhered to the rule that good public policy requires liberality in the right to access to and inspection of public records. Accordingly, we think that *Mid-America Television Co.* correctly resolved the constitutional issue raised herein, and we hereby adopt and concur in that decision. We therefore find no statutory or constitutional bar to disclosure of the information ordered to be furnished under the writ of *mandamus* at bar.

■ Defendants' second argument is that the constitutional and statutory provisions do not require public disclosure of individual transactions from a public official's *contingency* fund. Defendants rely here on quotations from the constitutional debate discussions addressing disclosure of contingency funds of investigative agencies. There, a member of the Revenue and Financial Committee which drafted the provision stated, "[t]he Committee was very much aware that certain investigative—perhaps offices such as the state's attorney might involve the use of contingency funds for various purposes in regard to which disclosure might be self-defeating." (2 Record of Proceedings, Sixth Constitutional Convention 873 (1970).) We can hardly conclude from the debate excerpts presented that records of expenditures from the mayor's contingency fund are exempt from disclosure. Taken in context of the debate, the above passage narrowly contemplates con-.

tingent funds which might be necessary for law enforcement or investigative offices, such as that of the State's Attorney, and where public disclosure would be likely to compromise confidential information. Defendants do not contend, and there are no facts of record which indicate that the expenditures from the mayor's contingency fund have been used for any law enforcement or investigational purposes. Accordingly, we find no merit in defendants' contention that the instant contingency fund account is exempt from disclosure under the constitution and statute.

Next, we are asked to determine whether plaintiff, as a member of the city council, is entitled to examine records of the mayor's contingency fund under chapter 25, section 29 of the Municipal Code of Chicago. This ordinance provides that: "All departments, bureaus, boards, or persons connected with the city government are hereby required to make such financial reports as may be ordered by the city council, and to permit examination of all their official records by any member of the city council, or any accredited representative of the press, except such records which by law are required to be kept confidential or which by ordinance are limited to inspection by certain designated persons."

■ Defendants argue that the ordinance is limited to disclosure of "official records," that the vouchers showing that funds were issued to the contingency fund account are the "official records," that plaintiff has already viewed these vouchers, and that the ordinance does not require defendants to "create" financial records except at the request of the full city council. We find these arguments unavailing. As previously mentioned, we consider the instant writ of *mandamus* to require disclosure only of existing records. Thus, under the facts in this case, we believe it is unnecessary to consider defendants' claims that the ordinance cannot require the "creation" of records at plaintiff's request. Moreover, defendants have not argued that the records sought do not, in fact, exist, but rather they have insisted that under the ordinance the vouchers are the only *official* records which exist. We believe that under the circumstances in this case, this distinction is not supported in logic or law. Rules of construction provide that words used in an ordinance are to be given their plain meaning and that construing courts should examine the language and its context, as well as the purpose of the ordinance. (*Warden v. Byrne* (1981), 102 Ill. App. 3d 501, 430 N.E.2d 126.) The plain language of this ordinance requires defendants to permit examination of all official records by any member of the city council. It is axiomatic that records of expenditures made from the mayor's contingency fund for

solely corporate purposes are "official records" as that term is contemplated by the ordinance. Further, in examining the purpose of the ordinance, it is evident that access to such financial records is necessary so that members of the city council can make informed decisions regarding matters of future appropriation of public funds. Finally, the ordinance expressly provides for two types of exceptions: (1) where confidentiality is required by law, or (2) where access is limited by ordinance. We have found no such law or ordinance restricting disclosure of the instant records, and none has been cited by the defendants. Accordingly, we find the issuance of the writ of *mandamus* supported by this ordinance.

Defendants next argue that itemized records of the contingency fund are not public records subject to disclosure under principles of common law. Although we have held that under the Local Records Act and Municipal Code of Chicago the records are available to plaintiff, defendants' argument raises the specter of factors which countervail the public's right to inspect the reports and which may require nondisclosure. Defendants point to the common law rule that the public's right of inspection is not without qualification. (See, *e.g., Lopez v. Fitzgerald* (1979), 76 Ill. 2d 107, 390 N.E.2d 835; *People ex rel. Better Broadcasting Council, Inc. v. Keane* (1973), 17 Ill. App. 3d 1090, 309 N.E.2d 362.) In *Lopez*, our supreme court utilized a balancing test in considering whether specific documents should be made accessible to the public under the common law right to examine public records. The court stated, "The interest of citizens in knowing what the government is doing and their proprietary interest in public property should be weighed against the interest of the public in having the business of government carried on efficiently and without undue interference." 76 Ill. 2d 107, 119, 390 N.E.2d 835, 839.

■ Defendants' position is that release of contingency fund records would impinge upon the mayor's "absolute, uncontrolled and unfettered use of the funds," which "were appropriated for the Mayor's own use." They also argue that to disclose expenditures from the fund would threaten privacy interests of third persons dealing with the mayor who have received payments in the belief that their identities would remain private. Initially, we find these arguments untenable since the appropriation ordinance creating the mayor's contingency fund expressly limits use of such funds to *corporate* purposes. Thus, the fund is obviously not intended for the mayor's own use. Secondly, we are aware of the defendants' failure in the trial court to make any persuasive showing, beyond similarly vague and general statements, of the need for confidentiality or of individual privacy in-

terests which outweighed the public's right to know. Indeed, the trial court provided defendant, Mayor Jane M. Byrne, a period of 14 days to make such a showing, yet defendant chose not to avail herself of the opportunity. From our review of the record, we cannot say that disclosure of the records at issue would tend to significantly impair the efficiency of the activities of the office of the mayor, or that disclosure would in fact impinge upon privacy rights of any individuals. Moreover, defendants have failed to clearly identify any public interest which countervails the general policy favoring open government to support withholding the records at bar. In the absence of such countervailing factors, we feel that the records of contingency fund expenditures must be open to public access.

## The Hay Reports

Plaintiff has sought disclosure of reports of a wide-ranging, approximately $700,000 study of city personnel practices and procedures compiled by Hay and Associates, an independent consulting firm, which was furnished to the mayor of Chicago in compliance with the above-mentioned appropriation ordinance. A portion of these so-called "Hay Reports," an executive summary volume, has been released by the mayor, and thus the instant controversy stems only from the mayor's refusal to release for review the remaining volumes of these reports. On appeal, defendants contend that the remainder of the Hay Reports are not subject to public disclosure under the Illinois Constitution, the Local Records Act, the Municipal Code of Chicago, or under Illinois common law. We find it unnecessary to look to the Constitution, the statute or common law to determine whether plaintiff is entitled to the writ compelling disclosure because we find that under the Municipal Code of Chicago, plaintiff is entitled to inspect copies of the records in question as a matter of right. Chapter 23, section 7 of the Municipal Code of Chicago provides in pertinent part that:
"The Municipal Librarian shall perform the following duties:
* * *

Collect from the Mayor and the head of each Department, Commission or Agency of the City three copies of each report, document, study or publication prepared by independent consultants, or other independent contractors. It shall be the duty of the Mayor and the head of each Department, Commission or Agency of the City to transmit three copies of each report, document, study or publication, within five days after receipt thereof, to the Municipal Reference Library. It shall be the duty

of the Municipal Reference Librarian to transmit a copy of each report, document, study or publication prepared by an independent consultant or other independent contractors to the Chairman of the Committee on Finance. However, any report, document, study or publication of the following types shall not be transmitted to or collected by the Municipal Reference Library:

1) Reports or memoranda of attorneys or investigators in preparation for or contemplation of litigation;

2) Reports relating to land acquisition by the City including but not limited to appraisals, title opinions, engineering reports and planning studies concerning the specific location of public improvements;

3) Reports relating to current or contemplated investigatory or operating procedures of the Police Department or Fire Department;

4) Reports or materials relating to a specific test or tests for use of the Department of Personnel in recruitment or promotional examinations;

5) Reports to the Mayor relating to specific individuals who are or may be under consideration for recruitment or promotion for employment by the City;

6) Reports which include information required by law to be held in confidence."

The plain language of the ordinance requires the mayor to transmit copies of each report, document, study or publication by independent consultants or contractors to the Municipal Reference Library within five days of the *receipt thereof.* (*Warden v. Byrne* (1981), 102 Ill. App. 3d 501, 430 N.E.2d 126.) It is evident from the words used that it is the materials *received* by the mayor which are to be transmitted, and therefore merely providing a summary of such materials does not satisfy the requirements of the ordinance.

■ Defendants contend that the Hay Reports fall within three of the above six exclusions enumerated in the ordinance. First, defendants argue that the reports are exempt from disclosure because they "relate to tests used for hiring and promotion by the Department of Personnel," and because they describe procedures for scoring, planning and validation of personnel examinations. The exemption stated in subparagraph (4) of the ordinance, however, is limited to reports and materials relating to *specific* tests. We believe that this exemption is concerned with preventing disclosure of materials relating to specific tests in order to maintain integrity and confidentiality within the personnel examination process. Defendants have conceded in the trial

court that the Hay Reports do not address specific tests. Accordingly, we find that the test materials exclusion of the ordinance is not applicable under the circumstances here.

Defendants also argue that the exemption in subparagraph (5), which excepts "reports to the Mayor relating to specific individuals who are or may be under consideration for recruitment or promotion for employment by the City," prevents disclosure. Defendants state that the reports contain a general analysis of current recruitment activities of the city of Chicago which includes a detailed listing of promotion and salary plans for all of the city's occupational classes. Defendants further contend that the reports contain references to promotions via salary and benefit increases for certain occupational titles, and that release of the reports would, by *cross-reference*, identify specific individuals who have an opportunity for promotion. We are not convinced from the record and arguments here that defendants have established that the reports relate to any *specific* individuals, much less those who are or may be under consideration for recruitment or promotion by the city. Even assuming that one might, as defendants fear, by cross-reference, identify a particular individual by job title as one having an *opportunity* for promotion, such does not necessarily identify that individual as one who is or may be under *consideration* for promotion.

Further, we again note that the order of *mandamus* appealed from provided the mayor a period of 14 days to make an *in camera* showing of the need to protect any individual's privacy right for confidentiality, and she declined the opportunity to do so. Under the circumstances at bar, we find this exclusion of the ordinance unavailing.

Defendants next assert that the reports are not subject to disclosure under subparagraph (6) of the ordinance which excludes "reports which include information required by law to be held in confidence." Defendants, however, have cited no applicable law which dictates non-disclosure. Rather, they place their reliance upon Rule XIX of the City of Chicago Personnel Rules promulgated by the commissioner of personnel pursuant to his rule-making authority under chapter 25.1, section 2 of the Municipal Code of Chicago. Section 2 of Rule XIX provides:

> "All personnel records of city employees and records and material relating to the administration of the personnel management system shall be considered confidential and the property of the City. *** Employee information and related personnel records and reports shall be made available for official purposes at the discretion of and in accordance with procedures pre-

scribed by the Director."

■ The rule makes confidential all personnel records and records and material relating to the administration of the personnel management system. Logically, this rule would restrict disclosure of records containing matters concerning the performance, discipline, promotion and related history of individual city employees, and of the administrative experience recorded in connection therewith. From the representations in the briefs and from the information revealing the contents of the Hay Reports which can be gleaned from the record before us, it appears that these reports fundamentally address broad policy and procedural questions relating to city personnel practices, and thus they differ significantly in kind from the types of personnel records protected under this rule. Accordingly, we find this rule inapplicable to the records in question. Moreover, it is unlikely that the city council intended that the rule-making authority of the commissioner of personnel should supplant the mayor's clear duty to transmit copies of reports by independent consultants under the Municipal Code of Chicago, which would be the implication if we accepted defendants' argument here. We therefore reject defendants' position that the Hay Reports are subject to any of the three exclusions advanced on appeal. Accordingly, we conclude that the documents in question are subject to disclosure under chapter 23, section 7 of the Municipal Code of Chicago. *Warden v. Byrne* (1981), 102 Ill. App. 3d 501, 430 N.E.2d 126.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

WILSON, P.J., and SULLIVAN, J., concur.